771 P.2d 185

**In the Matter of Esteban A. MARTINEZ, An Attorney Admitted to Practice Before the Courts of the State of New Mexico.**

**No. 16286.**

Supreme Court of New Mexico.

March 29, 1989.

Virginia A. Ferrara, Albuquerque, for Disciplinary Board.

Esteban A. Martinez, Las Vegas, pro se.

OPINION

PER CURIAM.

This matter is before the Court following disciplinary proceedings conducted pursuant to the Rules Governing Discipline, SCRA 1986, 17–101 through 17–316, wherein attorney Esteban A. Martinez was found to have committed numerous violations of those rules and of several rules of the former Code of Professional Responsibility, NMSA 1978, Rules 1–101 through 9–102. Pursuant to Rule 17–316(D), we adopt the Disciplinary Board's findings, conclusions, and recommendations and disbar Martinez pursuant to Rule 17–206(A)(1).

The facts in this case are undisputed. Martinez filed no answers to the charges served upon him and did not deny the allegations against him. He did not appear at the hearing held on the consolidated charges nor did he appear before this Court. The facts as alleged were deemed admitted pursuant to Rules 17–309(C)(2) and 17–310(C). The record contains substantial documentary evidence in support of all allegations.

In March 1983, Jose Quintana paid Martinez $250 to represent him in pursuing a claim he believed he had against an estate. Martinez failed to communicate with his client despite numerous efforts by Quintana to contact him. No entry of appearance or other pleading was filed by Martinez on behalf of Quintana in the probate proceedings nor did he ever communicate with the attorney handling the probate.

In this instance, Martinez has violated NMSA 1978, Code of Professional Responsibility Rules 1–102(A)(5), 2–106, 6–101(A)(3), and SCRA 1986, 16–103, 16–104, and 16–804(D).

In August 1987, Kenneth and Elizabeth McKinney paid Martinez $600 to represent their interests in a foreclosure proceeding. Although Martinez filed an answer and counterclaim on behalf of the McKinneys, between November 1987 and March 1988, he failed to communicate with his clients despite their repeated attempts to reach him. When a trial was scheduled for May 26, 1988, the McKinneys traveled from Tucumcari to Martinez's office in Las Vegas to retrieve their file. Martinez released the file but advised them he would refund no money. Consequently, the McKinneys represented themselves at the May 26 trial.

Martinez's conduct in the McKinney case was violative of SCRA 1986, 16–104, 16–105(A), 16–116(D), and 16–804(D).

Adan Vigil paid Martinez a flat fee of $250 to assist him with an appeal of his discharge from employment at the Las Vegas Medical Center (LVMC), an entity of the New Mexico Health and Environment Department (HED). In a prehearing memorandum filed with the State Personnel Board, Martinez listed the names of eight witnesses he planned to call to testify and represented that he also would be filing a motion concerning LVMC's alleged failure to afford his client an informal hearing prior to the termination of his employment. No motion was filed by Martinez, and, thereafter, he failed to communicate with the hearing officer, his client, or opposing counsel.

On January 20, 1988, via certified mail, Martinez received notice of a hearing to be held on April 20, 1988. Vigil learned of the setting through other sources and, on April 19, was able to locate Martinez who had advised Vigil to be at his office the next morning so they could go together to the hearing. When Vigil arrived at Martinez's office, Martinez was not there. A note found on the door informed Vigil that Martinez never received notice of the hearing so he had gone to Albuquerque for the day. Vigil attempted to represent himself at the hearing, but because no witnesses had been subpoenaed or appeared on his behalf, he ultimately withdrew his appeal. The matter was referred to disciplinary counsel by the attorneys representing HED pursuant to their obligations under Rule 16–803(A).

By his mishandling of the Vigil case, Martinez committed violations of SCRA 1986, 16–101, 16–103, 16–105(A), and 16–804(C) and (D).

On July 19, 1988, the Honorable Stanley F. Frost convened the trial of Samuel Quintana in his courtroom. A jury panel and all parties appeared for trial, but Martinez, who was attorney of record for Quintana, inexplicably did not. The jury panel was excused and the matter continued, necessitating an order from this Court to extend the time within which a trial could be held pursuant to SCRA 1986, 5–604(C). Thereafter, Judge Frost learned that Martinez's license to practice law had been suspended by this Court on June 13, 1988, for failure to pay his bar dues. Martinez took no steps to withdraw from Quintana's case or to insure that his client was not prejudiced by his withdrawal which, under the circumstances, would have been mandatory.

Likewise, Martinez also was retained to represent Jay Gamble in a criminal matter.

Martinez did appear with Gamble for arraignment on March 14, 1988, but thereafter failed to contact his client. Gamble first learned of his attorney's suspension when Judge Frost appointed new counsel to represent him. Quintana's father and Gamble both had paid Martinez fees of $2,000. Court records indicate that Martinez took no significant action on behalf of either client. Efforts by Quintana's father and by Gamble to locate Martinez and obtain refunds have been unsuccessful.

In both of these cases, Martinez's conduct was in violation of SCRA 1986, 16–101, 16–103, 16–104, 16–105, 16–116(A)(1) and (D), 16–302, 16–305(C), and 16–804(C), (D), and (H).

During this same period Martinez was paid $2,000 to represent Eusebio Jasper in connection with the shooting death of his wife. Martinez advised Jasper's family that Jasper's only possible defense would be one of diminished capacity. He requested and received from the family an additional $1,200 to obtain the services of an expert witness. Jasper never was interviewed or examined by an expert on the subject of diminished capacity, nor was such an expert called by Martinez to testify at the trial. Additionally, Martinez failed to file a notice of incapacity to form specific intent as required by SCRA 1986, 5–602(E) when such a defense is contemplated.

One day prior to Jasper's scheduled trial on June 20, 1988, Martinez called the Honorable David W. Bonham to advise him of his suspension from the practice of law. Martinez requested a continuance in order to rectify the problem with his license. Judge Bonham continued the matter until June 22, and Martinez subsequently assured the judge that he had been reinstated retroactively. The trial proceeded and Jasper was convicted of first degree murder and unlawfully carrying a firearm into a licensed liquor establishment. Several days after the verdict was returned, Judge Bonham was notified that the check tendered by Martinez in payment of his bar dues had been written on a closed account and that the reinstatement of Martinez was invalid. Judge Bonham subsequently granted Jasper a retrial based upon the incompetent assistance rendered by Martinez as well as upon Martinez's misrepresentations regarding his status as a licensed member of the New Mexico State Bar.

Efforts by Jasper's family to obtain a refund of the $2,000 fee and the $1,200 witness fee have been unsuccessful. The $1,200 was never placed in a trust account by Martinez as required by Rule 16–115(A). No bank in Las Vegas has any records to indicate that Martinez maintained an attorney trust account during this period, nor is there any statement of compliance, as required by Rule 17–204(B), on file with the clerk of this Court to indicate that he had such an account.

The conduct of Martinez with regard to the Jasper case violates SCRA 1986, 16–101, 16–104, 16–105(A), 16–115(A) and (B), 16–116(A)(1) and (D), 16–505(A), and 16–804(C), (D), and (H).

In addition to the misconduct noted above, Martinez totally ignored repeated requests from disciplinary counsel to respond to complaints regarding each of the matters for which he is now being disciplined, thus violating the requirements of Rule 16–803(D) with respect to each of the six complaints discussed herein.

Martinez is not a stranger to this Court in disciplinary matters. On April 17, 1986, we ordered that Martinez be suspended from the practice of law for a period of one year, but deferred the suspension and placed him on probation on the belief that the pattern of neglect he appeared to be developing could be corrected with appropriate supervision. *In re Martinez*, 104 N.M. 152, 717 P.2d 1121 (1986). When Martinez demonstrated an inability to adhere to the terms of his probation, his probation was revoked and suspension imposed. *In re Martinez*, 105 N.M. 246, 731 P.2d 942 (1987). He was subsequently reinstated to the practice of law on July 15, 1987, and placed on probation for an additional period of six months. In the past, we specifically found that Martinez had not engaged in any dishonest conduct. In view

of that fact and because of the apparent sincerity of his wish to be of service to the people of his community, we made every effort to assist him in developing procedures to insure that his caseload was reduced to manageable limits and that his clients were well represented. Martinez either was unwilling or incapable of availing himself of this assistance, and we are extremely disturbed by the conduct he now has exhibited. We agree with the Disciplinary Board's evaluation that the continued practice of law by Martinez would pose grave dangers to the public, the reputation of the profession, and the administration of justice, and find no alternative to disbarment.

The fees charged by Martinez would be more than modest for the services he agreed to perform had he actually performed them. However, when an attorney takes even a minimal fee from a client and does little or no work on the client's case, that fee is excessive. An attorney's fees, in non-contingency cases, must be reasonably related to the services rendered. It is clear that Martinez did not earn the fees paid by the clients noted in this opinion. For this reason, we also impose the additional sanction of restitution.

IT IS THEREFORE ORDERED that Esteban A. Martinez be and hereby is disbarred from the practice of law pursuant to Rule 17–206(A)(1), effective April 1, 1989.

IT IS FURTHER ORDERED that pursuant to Rule 17–206(C), Martinez will make restitution to the following persons in the following amounts:

| | | |
|---|---|---|
| 1. | Jose Quintana | $ 250.00 |
| 2. | Kenneth and Elizabeth McKinney | 600.00 |
| 3. | Adan Vigil | 250.00 |
| 4. | Tony Quintana (father of Samuel Quintana) | 2,000.00 |
| 5. | Jay Gamble | 2,000.00 |
| 6. | Tony and Chris Jasper (brothers of Eusebio Jasper) | 3,200.00 |

While we will not set a date by which this restitution must be paid, interest on the amounts ordered will accrue at the rate of fifteen percent (15%) per annum beginning on April 1, 1989, the effective date of Martinez's disbarment. Proof that all amounts due have been paid must be attached to

any request for permission to apply for reinstatement.

IT IS SO ORDERED.

STOWERS, RANSOM and BACA, JJ., concur.

SCARBOROUGH, J., not participating.