506 A.2d 1183

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**William James PARKER, Jr.**

**Misc. Docket (Subtitle BV) No. 8, Sept. Term, 1985.**

Court of Appeals of Maryland.

April 7, 1986.

---

Melvin Hirshman, Bar Counsel, for the Atty. Grievance Com'n of Maryland.

John Wheeler Glenn, Baltimore, for respondent.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ.

SMITH, Judge.

Bar Counsel, acting pursuant to the provisions of Maryland Rule BV9, filed a petition with us on behalf of the Attorney Grievance Commission seeking disciplinary action against William James Parker, Jr., a member of the Maryland Bar since May 24, 1979. He charged violation of Disciplinary Rules 1–102(A)(3), (4), and (6); 6–101(A)(1) and (3); 7–101(A)(1), (2), and (3); and 9–102(B)(3) and (4).[1] He

---

1. The text of the relevant rules is set forth in the opinion of the trial judge.

also charged a violation of what is now Maryland Code (1957, 1981 Repl.Vol., 1985 Cum.Supp.) Art. 10, § 44.[2]

## I

Pursuant to Rule BV9 b we referred the matter for hearing to a judge of the Seventh Judicial Circuit of Maryland. He has filed a comprehensive report with us in which he states:

## "FACTS

"In late December 1980 or early January 1981 Mrs. Dianeray Chanudet was introduced to the Respondent by his next door neighbor, Mrs. Kassem. At that time Mrs. Chanudet who was of Belgian origin was looking for the American equivalent of a *'l'homme d' affairs'* in her native land. Such a person would advise her upon business matters such as investing her money at the highest rate of interest. She had made her desire known to Mrs.

---

**2.** The statute currently provides in relevant part:

"(a)(1) If any attorney is entrusted with, or receives and accepts, or otherwise holds, deposit moneys or other trust moneys, of whatever kind or nature, such moneys, in the absence of court order to the contrary shall be expeditiously deposited in an account or accounts maintained as a separate account or accounts for funds belonging to others. In no event shall the attorney commingle any such funds with such attorney's funds or use any such funds for any purpose other than the purpose for which they were entrusted to the attorney.

*     *     *     *     *     *

"(b) Any attorney wilfully violating the provisions of this section shall be charged with professional misconduct, malpractice, or conduct prejudicial to the administration of justice and shall be proceeded against for reprimand, suspension, or disbarment under any applicable provision of this article or any other law or the Maryland Rules.

"(c) Any attorney wilfully violating the provisions of this section, in addition to the penalties set forth in subsection (b) of this section, shall be guilty of a misdemeanor for each such violation and, on conviction thereof, shall be fined not more than five thousand dollars ($5,000) or be imprisoned for not more than five (5) years, or both in the discretion of the court."

As to the origins of this statute see *Attorney Griev. Comm'n v. Lockhart,* 285 Md. 586, 589 n. 2, 403 A.2d 1241, 1243 n. 2 (1979).

Kassem whose husband practiced medicine in the hospital where Mrs. Chanudet worked as a director of the Physical Therapy Department. Mrs. Kassem suggested that her next door neighbor the Respondent who was an attorney, might help and arranged the introduction. Mrs. Chanudet met Respondent at his house, never went to his office and never regarded him as her attorney but only as her 'investment man'. She was never billed for Respondent's services or paid him anything although she expected she would be billed and pay after he rendered services just as she paid her accountant or her attorney.

"Respondent agreed to look for investments for her that would be safe (whether secure or secured) and yield a higher than normal rate of interest.

"On January 24, 1981, Mrs. Chanudet delivered to Respondent her check for $20,000.00 which he placed in his Attorney Escrow Account. He loaned $8,500.00 of this at 20% interest to Mrs. Betty A. Perrie. Mrs. Perrie was a friend of Mr. Parker who worked in the office of the Clerk of the Circuit Court for Prince George's County. The note was a confessed judgment note calling for payments of interest each six months and due in full 2 years from its date January 20, 1981. Mrs. Perrie needed the money to pay an annual installment due to the Federal Land Bank on a mortgage covering the tobacco and grain farm which she owned. Her estranged husband had failed to make this payment and she had to make it to save her property. At the time she borrowed this money her equity in the farm which Respondent personally inspected was about $132,000.00. This loan was clearly for a business purpose and was amply secured by the note. It was subsequently paid in full together with all earned interest. The last payment was made by check dated July 22, 1983.

"At about the same time he learned about Mrs. Perrie's need for money he also learned that the Messrs. Cassidy would be willing to borrow $30,000.00 at 20% interest to finance certain alterations they wished to make in the

space they were renting to the Maryland District Court in office buildings which they owned in Upper Marlboro. Respondent sought and obtained an additional $19,000.00 from Mrs. Chanudet on May 29, 1981. He had in the meantime obtained from the Cassidys a Promissory Note for the full $30,000.00 which was secured by a Deed of Trust on two rental properties in Upper Marlboro in which they had an equity of roughly $343,000.00. This loan closed as any other loan and was ultimately repaid in full with all of the interest due on 10/31/83.

"An indication of the relationship of Mrs. Chanudet to the Respondent and of the borrowers to the Respondent may be gleaned from the fact that she gave him $20,-000.00 without receiving so much as a written receipt and the Cassidys both practicing lawyers acting for themselves signed and delivered to him a Promissory Note for $30,000.00 when they had received only $11,000.00. Both borrowers and lender benefited financially in these transactions.

"Respondent thereafter became obsessed with the idea that he had to be able to pay over to Mrs. Chanudet any unexpended part of her capital ($500.00) and any earned interest whether paid or unpaid by the borrowers. He put the $500.00 in cash in a part of a safe which he had at his house and there it remained until he discovered it after these proceedings had begun and well after Mr. Mudd representing Mrs. Chanudet had declared that all of her money had been repaid. He reported this matter promptly and paid over to her this amount.

"Mrs. Chanudet never complained to anyone including the Respondent about his handling of her affairs. She went to another lawyer for the preparation of a will. When this lawyer, Mr. Munday inquired of Respondent about his handling of Mrs. Chanudet's money, Respondent was unable to provide him with documentation of his dealings with the $39,000.00 entrusted to Respondent. After a series of correspondence with Respondent, Mr. Munday reported the matter to the Commission. The

'accounting' furnished with this correspondence was something made up by Respondent and is worthless as such. Even the Respondent cannot now decipher it.

"Respondent deposited Mrs. Chanudet's initial check for $20,000.00 in his escrow account as well as her subsequent check for $19,000.00. He drew checks to borrowers for all but $500.00 of that. After he put the $500.00 cash in his safe he regarded the $500.00 remaining in his escrow account as his money to use if he wished. From that point on it is impossible to reconstruct from his escrow account or any other of *his* documents when he received or what he did with funds received on her behalf. On the Perrie loan we can determine what happened from her cancelled checks. On the Cassidy loan we cannot because of problems peculiar to the borrowers. Their records are in disarray because of the illness and death of Mr. Lewis Cassidy. Respondent did not maintain any written record of the dates or amounts of payments of interest or principal. Until Mr. Munday made inquiry of him March 25, 1983 he had paid to Mrs. Chanudet at her request $3,000.00. Up until that time this was the only money she had requested of him. Her testimony was that she thought he was going to deposit the interest to her account when received. His testimony was that he believed he was to hold on to it and reinvest it if suitable opportunity to do so was found. On this issue I think his understanding of his instructions was the correct one. During a part of the time that these events were taking place the Respondent was involved in serious domestic difficulties which culminated in his divorce in February 1985. [ (Emphasis by the trial judge.) ]

## "CONCLUSIONS

"Disciplinary Rule 1–102
   'Misconduct.
   (A) A lawyer shall not:

(3) Engage in illegal conduct involving moral turpitude.

(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

(6) Engage in any other conduct that adversely reflects on his fitness to practice law.'

"Respondent did not 'expeditiously deposit in an account ... for funds belonging to others' all of the funds he received belonging to Mrs. Chanudet. His deposits into his escrow account of the capital sums satisfied the requirements of Article 10 Section 44 but his handling of the interest payments he received did not. This statute does not turn on whether there is an attorney client relationship. It is clear, unambiguous and compelling. I conclude that Respondent's conduct in putting funds he believed belonged to Mrs. Chanudet in cash in his safe in his house, in substitution for her funds which had been properly deposited in his escrow account and his cashing of a check from one of the borrowers at a store together with his failure to promptly deposit all other checks for payment of interest as required by this statute are violations of this statute. The statute requires only a general intent to do the act not a specific intent to commit the crime. (McBurney v. State 280 Md. 21) Respondent's acts were knowing and intentional acts which because of his status as an attorney were a violation of this law. I conclude that the violation of this statute in cashing an interest check, commingling funds and misrepresenting to another attorney the handling of the funds entrusted to him constitute violations of this Rule.

"Respondent violated DR 1–102.

"Disciplinary Rule 6–101

'Failing to Act Competently.

(A) A lawyer shall not:

(1) Handle a legal matter which he knows or should know that he is not competent to

handle, without associating with him a lawyer who is competent to handle it.

(3) Neglect a legal matter entrusted to him.'

"I conclude that Respondent's handling of the investment aspects of this matter was competent. I further conclude that he knew or should have known that the course of conduct he followed in handling and accounting for this money was not appropriate and grossly incompetent, for anyone, let alone for a member of the bar who at one time or another taught elementary accounting. His obsession with being able to return Mrs. Chanudet's money to her in cash at any time is unexplainable in the evidence or any inference I can draw from it. In a transaction such as this which involved evaluating the safety of investments, passing upon the validity of instruments evidencing debt, security therefor, and negotiating the terms and interest rates of loans I conclude that the relationship of attorney and client existed even though neither attorney nor client thought so and there was no formal retainer or agreement as to fee. I conclude that his failure to deposit the funds of Mrs. Chanudet as they were returned to him in payments by the borrowers in some form of interest bearing account also violates both subsections of this Rule.

"I conclude that Respondent violated DR 6–101.

"Disciplinary Rule 7–101

'Representing a Client Zealously.

(A) A lawyer shall not intentionally:

(1) Fail to seek the lawful objectives of his client through reasonably available means permitted by law and the Disciplinary Rules, except as provided by DR 7–101(B). A lawyer does not violate this Disciplinary Rule, however, by acceding to reasonable requests of opposing counsel which do not prejudice the rights of his client, by being punctual in fulfilling all professional commitments, by avoiding offensive tactics, or

by treating with courtesy and consideration all persons involved in the legal process.

(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2–110, DR 5–102, and DR 5–105.

(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7–102(B).'

"I conclude that there is no clear and convincing evidence that Respondent violated this Rule. Anything which might arguably violate this Rule would relate to subsections (2) and (3) and is more exactly and specifically dealt with [in] the conclusions relating to other Rules. I am absolutely convinced that Respondent intended to do the very best he could for Mrs. Chanudet within his understanding and knowledge at that time.

"I conclude the Respondent did not violate DR 7–101(A)(1)(2)(3).

"Disciplinary Rule 9–102

'Preserving Identity of Funds and Property of a Client.

(B) A lawyer shall:

(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.

(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive.'

"There can be no doubt, whatsoever, that Respondent failed to maintain any records of the funds he received as interest payments or to render an appropriate account regarding them.

"Respondent did, however, pay or deliver with reasonable promptness the funds in his possession when requested. I am not able to conclude that his conduct in this respect was inappropriate considering his lack of records or accounts.

"I conclude that Respondent violated DR 9–102(B)(3) but did not violate DR 9–102(B)(4)."

## II

Both Bar Counsel and Parker have filed exceptions. We accept a trial judge's findings of fact unless they are found to be clearly erroneous. *Attorney Griev. Comm'n v. Collins,* 295 Md. 532, 548, 457 A.2d 1134, 1142 (1983); *Attorney Griev. Comm'n v. Kahn,* 290 Md. 654, 678, 431 A.2d 1336, 1349 (1981).

### a

Bar Counsel has excepted to the failure of the trial judge to find a misuse of the funds belonging to Mrs. Chanudet by Parker and a failure to find dishonesty under DR 1–102(A)(4). We are disturbed by Parker's conduct here as our sanction will indicate. However, we cannot say that the conclusions drawn by the trial judge from the evidence before him were clearly erroneous. Accordingly, we overrule these exceptions.

### b

Parker has filed seven exceptions which he suggests "actually fall into three basic categories," namely:

"1. Was there an attorney-client relationship between Mrs. Chanudet and Respondent? (Exception No. 4)

"2. Did the Respondent 'misrepresent' to another attorney his handling of the funds of Mrs. Chanudet? (Exception No. 2)

"3. Was the activity of Respondent in violation of those provisions of law dealing with the obligation of an

attorney to properly deposit, account for and pay over funds of a client? (Exceptions 1, 3, 5, 6 and 7)"

At oral argument Parker's counsel said that he could "live with the findings and recommendations of the trial judge," that his exceptions did not go to the issue of culpability but to the issue of degree of responsibility. We have reviewed the record and, as in the case of the exceptions of Bar Counsel, we conclude that the trial judge did not clearly err in the conclusions he drew from the evidence before him. Therefore, we overrule these exceptions.

## III

■ Given the findings of the trial judge, the case we have before us is not one of misappropriation of funds. If it were, then under our cases, absent compelling extenuating circumstances, disbarment would be the sanction to be imposed. We have said that the duty rests upon the courts and the profession as a whole to uphold the highest standards of professional conduct and to protect the public from imposition by the unfit or unscrupulous practitioner. *Attorney Griev. Comm'n v. Andresen*, 281 Md. 152, 159, 379 A.2d 159, 163 (1977). We are much concerned by the violation in this case of Art. 10, § 44 and of the failure of Parker to maintain any kind of comprehensible records so that he could render an intelligent accounting in this case. We conclude that the proper sanction to be imposed is suspension from the practice of law in this State for ninety days beginning thirty days after the filing of the opinion in this case. The suspension shall continue thereafter until all costs in this case have been paid.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV15 c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST WILLIAM JAMES PARKER, JR.