789 A.2d 119

**ATTORNEY GRIEVANCE COMMISSION OF MARYLAND**

v.

**John A. HAYES, Jr.**

**No. 48, Sept. Term, 2000.**

Court of Appeals of Maryland.

Jan. 18, 2002.

Melvin Hirshman, Bar Counsel and James P. Botluk, Asst. Bar Counsel for the Atty. Grievance Com'n of Md., for petitioner.

Norman L. Smith, Esq. (Fisher & Winner, LLP), Baltimore, for respondent.

Argued Before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

BELL, Chief Judge.

The only issue to be decided in this Attorney discipline case is the appropriate sanction to be imposed on the respondent, John A. Hayes, Jr., for violation of certain of the Rules of Professional Conduct, Maryland Rule 16–812,[1] Maryland Code (1989, 2000 Replacement Volume) § 10–306 of the Business Occupations and Professions Article,[2] commingling of funds,[3]

---

1. Rule 1.15(a), Safekeeping Property, provides:

    "(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Subtitle BU of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation."

    Rule 8.4 (a), Misconduct, provides:

    "It is professional misconduct for a lawyer to:

    "(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another. . . ."

2. That section provides:

    "A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer."

3. Maryland Rule 16–607 prohibits the Commingling of funds. It provides:

    "a. General Prohibition. An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16–604 or permitted to be so deposited by section b. of this Rule.

    "b. Exceptions.

    "1. An attorney or law firm shall either (A) deposit into an attorney trust account funds to pay any fees, service charges, or minimum balance required by the financial institution to open or maintain the account, including those fees that cannot be charged against interest due to the Maryland Legal Services Corporation Fund pursuant to Rule 16–610(b)(1)(D), or (B) enter into an agree-

and drawing a check made payable to cash on his escrow account [4] on 4 occasions.[5] The petitioner recommends that the respondent be disbarred from the practice of law. The re-

ment with the financial institution to have any fees or charges deducted from an operating account maintained by the attorney or law firm. The attorney or law firm may deposit into an attorney trust account any funds expected to be advanced on behalf of a client and expected to be reimbursed to the attorney by the client. "2. An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm. The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.
"3. Funds of a client or beneficial owner may be pooled and commingled in an attorney trust account with the funds held for other clients or beneficial owners."

4. Maryland rule 16–609 provides:
"An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer."

5. The Attorney Grievance Commission of Maryland, acting through Bar Counsel, *see* Maryland Rule 16–709, and at the direction of the Review Board, Maryland Rule 16–707, brought charges against the respondent and, following a hearing at which the facts were stipulated, the Honorable Alan L. Schwait of the Circuit Court for Baltimore City, to whom the Court referred the matter for findings of fact and conclusions of law, *see* Maryland Rule 16–709(b), concluded that the each of the charges had been proven. Although neither the petitioner nor the respondent took exceptions either to the findings of fact or conclusions of law, the respondent particularly stressed four of the stipulated facts, namely:
"(1) prior to July 1999, Respondent did not have an operating account in connection with his law practice, but instead used his attorney trust account for his personal and business use; (2) at no time did Mr. Gerald Graybill, the only client involved in the conduct at issue, or any other client, complain to the Attorney Grievance Commission; (3) Mr. Graybill suffered no loss as a result of Respondent's acts; and (4) the parties stipulated, at the June 6, 2001 hearing, that Mr. Hayes gave his full support and cooperation to the Attorney Grievance Commission in its investigation of this matter and that Mr. Hayes was, at all times during the investigation, candid and forthright."

spondent counters that the violations merit only a reprimand, but if a greater sanction is warranted, no more than a short period of suspension should be imposed.

The facts out of which these violations arose are not in dispute and, in fact, were stipulated. They involve the respondent's handling of client funds in his possession as a result of the settlement of a medical malpractice action he and James K. Fowley, whom the respondent enlisted for the purpose, handled on behalf of Gerald Graybill, a homeless person.[6] After deducting the one-third contingent attorney's fee, Mr. Fowley forwarded the client's share of the proceeds, $30,000.00, to the respondent,[7] which he deposited in his attorney trust account at First Union National Bank on January 27, 1999. On the same day, the respondent drew a check, in the amount of $23,500.00 and payable to the client, on that account, which he forwarded to the client. At the request of the client, who, "[a]nticipating a settlement ... asked Respondent to negotiate payments to several of [his] creditors whose claims were unrelated to the litigation," the respondent retained $6500.00 of the client's monies for the purpose of paying certain of the client's creditors.

When the check to the client cleared on February 2, 1999, the balance in the respondent's attorney trust account was reduced to $6232.90, $267.10 less than the amount he retained.[8] Thereafter, during that month, the respondent wrote

---

6. The respondent came to the attention of the petitioner as a result of overdrafts in his attorney trust account, not via a complaint from Mr. Graybill. First Union, as required by law, see Maryland Rule 16–610(b)(A), notified the petitioner upon the occurrence of the first overdraft. When brought to his attention, the respondent opened, in July 1999, two accounts at Carrollton Bank, one a new attorney trust account and the other an operating account.

7. Although the settlement check was sent to Mr. Fowley, we were informed at argument that the respondent received his share of the attorney's fee.

8. Although the respondent wrote a check for $500.00 on his trust account payable to Timothy Grayson to reimburse Mr. Grayson for

checks on the trust account for personal and business expenses, with the result that the account had a negative balance of $81.78 on February 26, 1999.

Before paying the client's creditors, the respondent negotiated with each one, resulting in a compromise of the claims by appropriately 50 per cent. Payments on behalf of the client, to discharge the client's financial obligation to his creditors were made on March 15th and 16th to Union Hospital of Elkton and CRA Collections, respectively. A $500.00 check written on January 27th to Timothy Grayson for advances made on behalf of the client was paid on May 5, 1999. After deducting the bonus, $100.00, that the client insisted that the respondent take, on that date, the amount of client funds in the respondent's possession after May 5 was $3500.00. That amount was paid over to the client between August and October. Before that could be accomplished, however, the respondent had to locate the client, with whom he had lost contact, and he expended some effort in doing so.

At the end of June, 1999, while the respondent was still holding the $3500.00 for the client, the respondent's attorney trust account again showed a negative balance. The account reflected, as it had leading up to the earlier negative balance, that the respondent had written a number of checks for personal and business purposes.

The hearing judge found, as the respondent readily admitted, that the respondent commingled client funds with his own funds in the First Union attorney trust account and used that account as a general and personal account, depositing client funds as well as his own funds into the account "and using all money in the account to pay bills." In addition, he found that the respondent drew checks payable to cash on the attorney trust account on four occasions. The hearing judge also found that there were mitigating factors: the respondent's candor in acknowledging his misuse of the attorney trust account; only

funds advanced in connection with the client's case, that check was not paid until May 5, 1999.

one client was involved in the misconduct; the misconduct occurred while the respondent was attempting to assist the client, without compensation, in a matter unrelated to the matter in which he represented the client; the fact that, when he lost track of him, the respondent undertook to locate the client so that funds belonging to him could be returned; the respondent's participation in the Maryland Volunteer Lawyers Services and willingness to handle pro bono cases and the respondent's good character, as attested to by a number of character witnesses, including two former Circuit Court judges. In addition, the hearing judge credited the testimony of Dr. Wendy Zimmerman, a licensed psychologist. She testified that the respondent suffers from attention deficit disorder, which "manifests itself in Respondent's lack of success at the business end of his law practice . . . causing him to be 'not good with monetary matters'. . . and to have trouble collecting money for his legal services."

In arguing that disbarment is the appropriate sanction, the petitioner reminds us of our consistent and repeated admonition that "[m]isappropriation of funds by an attorney is an act infested with deceit and dishonesty and ordinarily will result in disbarment in the absence of compelling extenuating circumstances justifying a lesser sanction." *Attorney Griev. Comm'n v. Bakas,* 323 Md. 395, 403, 593 A.2d 1087, 1091 (1991). It relies on *Attorney Griev. Comm'n of Maryland v. Bernstein,* 363 Md. 208, 226, 768 A.2d 607, 617 (2001); *Attorney Griev. Comm'n v. Tomaino,* 362 Md. 483, 498, 765 A.2d 653, 661 (2001); *Attorney Griev. Comm'n v. Sheridan,* 357 Md. 1, 27, 741 A.2d 1143, 1156 (1999). Rejecting any suggestion that the attention deficit disorder from which the respondent suffers should suffice as a compelling extenuating circumstance, the petitioner points to our decision in *Attorney Griev. Comm'n v. Vanderlinde,* 364 Md. 376, 413–14, 773 A.2d 463, 485 (2001), which is the latest word on when a mental condition can be so considered, when it is "most serious and debilitating," the " 'root cause,' of the misconduct," and "result[s] in [the] attorney's utter inability to conform his or her conduct in accordance with the law and with the MRPC."

Stressing the mitigating factors found by the hearing judge, the purpose of disciplinary proceedings, see *Attorney Griev. Comm'n v. Jeter,* 365 Md. 279, 289, 778 A.2d 390, 396 (2001) ("to protect the public rather than to punish the attorney who engages in misconduct") and the fact that the hearing judge did not make findings as to the respondent's intent, at the same time acknowledging that "his general intent to deposit and commingle client and personal funds in a trust account is sufficient to sustain the violations," the respondent argues that "the acts to which he has readily admitted, while wrong and inexcusable, reflect no intentional fraud, deceit, or dishonesty." That this is so, he maintains, is shown by the fact that he sought the client out to return the portion of the monies he had saved for him by negotiating a reduced settlement amount, rather than simply doing nothing when he lost track of him. The lack of an intent "to deprive his client of money" or that his conduct was not consciously done for an unlawful purpose is, the respondent submits, the logical conclusion of the finding that the hearing judge made. It is also of significance to the respondent that the petitioner did not charge him, pursuant to Maryland Rule of Professional Conduct 8.4(c), which proscribes conduct involving dishonesty, fraud, deceit or misrepresentation.

The respondent also relies on his attention deficit disorder as a compelling extenuating circumstance, in that, as Dr. Zimmerman testified, it caused him to have problems with the business aspects of his law practice. Other witnesses confirmed, and the respondent admitted, that the respondent had had such problems. In addition, the respondent points to his thirty years of practice, without any prior disciplinary complaint, as a further mitigator.

Thus, the respondent contends the misappropriation rule does not apply. He believes, moreover, that disbarment is unwarranted, that, at most, a short period of suspension would be sufficient to protect the public.

Standard 5.11 of the American Bar Association Standards for Imposing Lawyer Sanctions (1986), provides that:

"Disbarment is generally appropriate when:

"(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

"(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice."

Our cases, in which the Court states the general rule, that disbarment will inevitably follow any unmitigated misappropriation of client, or any third party's funds, are consistent, especially as relates to misconduct of the kind proscribed by subsection (b). *See e.g. Attorney Griev. Comm'n v. Vanderlinde*, 364 Md. 376, 413–14, 773 A.2d 463, 485 (2001); *Attorney Griev. Comm'n v. Bernstein*, 363 Md. 208, 768 A.2d 607, (2001); *Attorney Griev. Comm'n v. Tomaino*, 362 Md. 483, 498, 765 A.2d 653, 661 (2001); *Attorney Griev. Comm'n v. Williams*, 335 Md. 458, 474, 644 A.2d 490, 497 (1994); *Attorney Griev. Comm'n v. White*, 328 Md. 412, 417, 614 A.2d 955, 958 (1992); *Attorney Griev. Comm'n v. Bakas*, 323 Md. 395, 403, 593 A.2d 1087, 1091 (1991); *Attorney Griev. Comm'n v. Owrutsky*, 322 Md. 334, 345, 587 A.2d 511, 516 (1991); *Attorney Griev. Comm'n v. Kolodner*, 321 Md. 545, 583 A.2d 724, (1991); *Attorney Griev. Comm'n v. Ezrin*, 312 Md. 603, 608–09, 541 A.2d 966, 969 (1988); *Attorney Griev. Comm'n v. Bloom*, 306 Md. 609, 510 A.2d 589, (1986); *Attorney Griev. Comm'n v. Cockrell*, 304 Md. 379, 393–94, 499 A.2d 928, 935 (1985); *Attorney Griev. Comm'n v. Boehm*, 293 Md. 476, 446 A.2d 52, (1982); *Attorney Griev. Comm'n v. Burka*, 292 Md. 221, 438 A.2d 514, (1981); *Attorney Griev. Comm'n v. Micka*, 289 Md. 131, 422 A.2d 383, (1980); *Attorney Griev. Comm'n v. Garson*, 287 Md. 502, 413 A.2d 564,(1980); *Attorney Griev. Comm'n v. McBurney*, 283 Md. 628, 392 A.2d 81, (1978);

*Attorney Griev. Comm'n v. Andresen,* 281 Md. 152, 379 A.2d 159, (1977); *Attorney Griev. Comm'n v. Silk,* 279 Md. 345, 369 A.2d 70, (1977); *Bar Ass'n of Baltimore City v. Carruth,* 271 Md. 720, 319 A.2d 532, (1974); *Bar Ass'n of Baltimore City v. Marshall,* 269 Md. 510, 307 A.2d 677, (1973).

The question of whether there has been a misappropriation is a matter entrusted to the determination of the hearing court. Thus, its findings in that regard on that point are important. *See Attorney Griev. Comm'n v. Parker,* 306 Md. 36, 46, 506 A.2d 1183, 1189 (1986) ("Given the findings of the trial judge, the case we have before us is not one of misappropriation of funds."). Because it informs the quality of the misconduct for sanction purposes, so too is the intent with which the misconduct was committed. *Attorney Griev. Comm'n v. Tomaino,* 362 Md. 483, 498, 765 A.2d 653, 661 (2001) (the state of mind of the attorney at the time of the violation is important in the context of mitigation.); *Attorney Griev. Comm'n v. Sheridan,* 357 Md. 1, 29, 741 A.2d 1143, 1158 (1999) ("We agree with Respondent that his state of mind at the time he violated the ethical rules is important in the context of mitigation."); *Attorney Griev. Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997) ("Although ignorance does not excuse a violation of disciplinary rules, a finding with respect to the intent with which a violation was committed is relevant on the issue of the appropriate sanction."). *See Attorney Griev. Comm'n v. Glenn,* 341 Md. 448, 485, 671 A.2d 463, 481 (1996), in which this Court noted and explicated the levels of culpability for attorney misconduct established by the ABA Standards. What's more, because, in an attorney disciplinary proceeding, the findings of fact made by the hearing judge "are prima facie correct and will not be disturbed on review unless clearly erroneous," *id.* at 470, 671 A.2d at 473, "[w]e are constrained to accept," *Sheridan,* 357 Md. at 29, 741 A.2d at 1158, that judge's factual findings if they are grounded on clear and convincing evidence or, in the case of mitigation, a preponderance of the evidence. *Id.* at 17–18, 741 A.2d at 1152. *Parker* and *Awuah* are illustrative.

In *Parker*, the respondent, having "agreed to look for investments for [his client [9]] that would be safe (whether secure or secured) and yield a higher than normal rate of interest," was found by the hearing judge to have engaged in misconduct as proscribed by various of the Rules of Professional Conduct. Although one of the Rules he was found to have violated prohibited an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, § 1–102(A)(4) and the violation consisted of the respondent cashing an interest check, commingling funds and misrepresenting to another attorney the handling of the funds entrusted to him, the hearing judge did not find that the respondent had violated that subsection, prompting the Attorney Grievance Commission to take an exception. It was in this context that we overruled the exceptions, commenting: "Given the findings of the trial judge, the case we have before us is not one of misappropriation of funds. If it were, then under our cases, absent compelling extenuating circumstances, disbarment would be the sanction to be imposed." *Id.* at 46, 506 A.2d at 1188. We imposed a sanction of a ninety day suspension from the practice of law. *Id.*

In *Awuah*, the respondent attorney failed to maintain or properly designate a trust account, repeatedly commingled client funds with his own, failed to keep proper records regarding the handling of those funds, on one occasion, directly transferred, albeit, accidentally, client trust funds into an operating account, and on several occasions wrote checks to cash out of what he maintained as a trust account. The hearing judge viewed these violations as unintentional and found them to be the result of the respondent's ignorance of

---

9. Although neither the respondent in that case nor the person for whom he was investing thought that there was an attorney client relationship, the hearing judge found that there was, *Attorney Griev. Comm'n v. Parker*, 306 Md. 36, 43, 506 A.2d 1183, 1187 (1986). That finding was initially the subject of an exception filed by the respondent, but it was not pursued, the respondent's counsel having indicated at oral argument "he could 'live with the findings and recommendations of the trial judge,' that his exceptions did not go to the issue of culpability but to the issue of degree of responsibility." *Id.* at 46, 506 A.2d at 1188.

his ethical obligations and, in any event, the respondent "was not motivated to use client funds for his own benefit." 346 Md. at 431–32, 697 A.2d at 453. The exception that Bar Counsel took to the hearing judge's failure to find a misappropriation was overruled. The Court explained:

"It questions a factual finding by the judge who not only heard, but also was able to observe the demeanor of the respondent, whose testimony he credited. Judge Mason articulated the basis for his conclusion that Bar Counsel did not establish by clear and convincing evidence that respondent failed to return the money to the clients. He considered the character testimony presented by the respondent, the absence of other evidence to indicate that respondent on any other occasion took client monies for his own use, and the overwhelming conceded evidence with respect to respondent's total ineptness concerning the handling of the business aspects of his practice. It is well settled that, in disciplinary proceedings, the factual findings of the hearing judge will not be disturbed unless they are clearly erroneous. *Attorney Griev. Comm'n v. Kemp,* 303 Md. 664, 674, 496 A.2d 672, 677 (1985). See also, Maryland Rule 8–131. There simply is no basis for overturning Judge Mason's factual finding that the respondent did not misappropriate any of his clients' money."

*Id.* at 433–34, 697 A.2d at 453. The sanction imposed in that case was an indefinite suspension from the practice of law, with the right to apply for reinstatement after 60 days.

The latest case of this Court to address this subject is *Attorney Griev. Comm'n v. Jeter,* 365 Md. 279, 778 A.2d 390 (2001). The charges in that case involved the fee the respondent in that case charged and his failure to maintain a trust account and to disburse payment promptly to the physical therapist who treated his client. The hearing court found, *inter alia,* that Jeter, by depositing client funds in an account that was not an escrow account and not paying the physical therapist until six months after receiving the client funds out of which to do so and then by certified check, commingled funds, prohibited by Rule 1.15, and violated Maryland Code

(1989, 1995 Repl.Vol.), § 10–306 of the Business Occupations and Professions Article. It concluded, however,

"Perhaps the events in this case would not have taken this course had the Respondent thoroughly understood the professional responsibilities required for the handling of personal injury cases. This Court finds that the Respondent is truly remorseful. He never intended to defraud Ms. Schulman (the physical therapist) or Ms. Brown (his client). The Respondent naively considered that as long as they were paid in the long run, regardless of how he handled the funds, this was professionally responsible."

*Id.* at 286, 778 A.2d at 394. We overruled the Commission's exceptions, pointing out:

"The court made findings concerning the respondent's intention, knowledge of the Rules of Professional Conduct and the effect of the misconduct on the respondent's financial well-being. While these matters will not determine whether the misconduct charged occurred, they are relevant to the question of the appropriate sanction. That the effect of the respondent's action may be to misappropriate funds belonging to another, as in *Attorney Griev. Comm'n v. Bernstein,* 363 Md. 208, 221, 768 A.2d 607, 614 (2001), does not mean that the actions were taken with the intent to misappropriate.[10]

"Similarly, this is the case with respect to the finding of no personal enrichment and the respondent's knowledge of the Rules of Professional Conduct. Clearly, one who acts with deliberation and calculation, fully cognizant of the

---

**10.** That is the point Judge Wilner made in dissent, when he wrote:

"The co-mingling of client and attorney funds always creates the potential for misappropriation, even when there is no intent to misappropriate. A misappropriation necessarily occurs whenever the attorney withdraws funds from a co-mingled account for his or her own purpose and, as a result, leaves the account insufficient to cover all client funds, and such a misappropriation is never innocent. It is not necessarily willful, however, or for the conscious purpose of unlawfully taking funds held in trust for another."

*Attorney Griev. Comm'n v. Bernstein,* 363 Md. 208, 231, 768 A.2d 607, 619–20 (2001).

situation and, therefore, fully intending the result that is achieved is more culpable than one who, though doing the same act, does so unintentionally, negligently or without full appreciation of the consequences."

*Id.* at 289, 778 A.2d at 395.

The cases on which the petitioner relies are not inconsistent and, thus, do not require the result for which it argues. We have already noted that in both *Sheridan* and *Tomaino,* this Court stated its acknowledgment of the role of the hearing court's factfinding, counseling deference to it, 357 Md. at 29, 741 A.2d at 1158, 362 Md. at 498, 765 A.2d at 661–62. There is a similar acknowledgment in the *Bernstein* opinion. *See* 363 Md. at 228, 768 A.2d at 618. Notwithstanding our emphatic statement that neither ignorance of ethical duties nor ignorance of bookkeeping requirements is a defense in disciplinary proceedings, in *Bernstein* we also stated quite clearly, that "a finding with respect to the intent with which a violation was committed may have a bearing on the appropriate sanction." *Id.* at 228, 768 A.2d at 618, *citing Awuah,* 346 Md. at 435, 697 A.2d at 454. In *Sheridan,* the attorney was found to have commingled client funds with his own, in violation of Rule 1.15, used trust funds for a purpose other than that for which they were entrusted, in violation of § 10–306 of the Business Occupations and Professions Article, and to have engaged "in conduct involving dishonesty, fraud, deceit or misrepresentation," proscribed by Rule 8.4(c). Nevertheless, the Court concluded, as explained in *Tomaino* (362 Md. at 498, 765 A.2d at 661–62 (Md.2001)),

the attorney who had misappropriated client funds was indefinitely suspended with the right to apply for reinstatement no earlier than one year thereafter. This was because the state of mind of the attorney at the time of the violation "[was] important in the context of mitigation." [*Sheridan,*] 357 Md. at 29, 741 A.2d at 1158. In that case the circuit judge, acting as a master for this Court, found as a fact that Sheridan's actions were not intentionally fraudulent, an assessment that we were "constrained to accept." *Id.*

Moreover, in *Tomaino* and *Bernstein,* as in most of the cases, previously cited for the inevitability of disbarment in unmitigated misappropriation cases,[11] in which disbarment was ordered, there was a finding of the violation of a Rule of Professional Conduct implicating the attorney's honesty and integrity and/or a finding by the hearing judge that the violation or the conduct was willful in the sense that the attorney intended the consequences of the violation.

*Tomaino* was found to have violated Rule 8.4(c), proscribing engaging "in conduct involving dishonesty, fraud, deceit or

---

**11.** The one exception is *Attorney Griev. Comm'n v. Boehm,* 293 Md. 476, 446 A.2d 52, (1982). There, despite there being only a finding of misrepresentation and an explicit finding of no fraud or deceit, the hearing court believing the handling of the funds was negligent, the Court said:

"We cannot conceive of any clearer or more convincing evidence of Boehm's misappropriation of Johns Estate funds than that supplied by the escrow account, bank records, and Boehm's failure to explain exactly how these funds were used. The trial judge concluded that Boehm had merely been negligent in handling the estate funds by relying on his bookkeeper to keep his accounts in order. The evidentiary record justifies Bar Counsel's concern with the trial judge's conclusion.

"It is reprehensible for an attorney to misappropriate funds entrusted to his care. Such misconduct, absent extenuating circumstances, ordinarily warrants disbarment. *Attorney Griev. Comm'n v. Pattison,* 292 Md. 599, 441 A.2d 328 (1982); *Attorney Griev. Comm'n v. Burka,* 292 Md. 221, 438 A.2d 514 (1981). Boehm's contention that his inexperience and poor accounting practices constitute extenuating circumstances is without merit under the facts of this case. A member of the Bar of this State is presumed to be trustworthy and competent to handle funds entrusted to his care. If he is not competent, he is under an obligation either to refuse the representation or to join another member of the Bar to handle the matter who is proficient and competent. However, it is axiomatic that one does not have to be a lawyer to know that it is dishonest to convert to one's own use the property of another without authorization. Boehm's conduct cannot be condoned and the appropriate sanction is disbarment."

*Id.* at 481, 446 A.2d at 54. The continued vitality of *Boehm* has been undermined by the recent cases of this Court, previously discussed. See *Attorney Griev. Comm'n v. Jeter,* 365 Md. 279, 289, 778 A.2d 390, 395–96 (2001); *Attorney Griev. Comm'n v. Tomaino,* 362 Md. 483, 498, 765 A.2d 653, 661–62 (2001); *Attorney Griev. Comm'n v. Sheridan,* 357 Md. 1, 29, 741 A.2d 1143, 1158 (1999); *Attorney Griev. Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997).

misrepresentation," Rule 1.15, prohibiting the commingling of client property, and Maryland Code (1989, 2000 Repl.Vol.), § 10–306 of the Business Occupations and Professions Article, pertaining to the use of trust money ("A lawyer may not use trust money for any purpose other than the purpose for which the trust money is entrusted to the lawyer"). In addition to finding the violations, the hearing judge found that they were "knowing, willful, and deceitful and evidenced 'pervasive dishonesty.'" 362 Md. at 498, 765 A.2d at 662. Similarly, in *Bernstein,* in addition to finding that the respondent attorney violated, among others, Rule 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation), the hearing judge concluded that the misappropriation was willful and specifically rejected the respondent attorney's explanations for why the balance in the trust account fell below the trust obligation. 363 Md. at 227–28, 768 A.2d at 617–18.

In the case sub judice, there is neither a finding that the respondent violated a disciplinary rule necessarily implicating his honesty or integrity, nor a finding by the hearing judge that the respondent's actions were taken with a dishonest or fraudulent intent. Indeed, as the respondent points out, he was not even charged with violating Rule 8.4(c). Moreover, the findings that the hearing judge made with regard to mitigating factors are inconsistent with and, thus tends to negate, any dishonest or fraudulent intent. We hold, under these circumstances, the automatic disbarment rule for misappropriation does not apply, that this is not the kind of willful conduct to which the rule was directed or intended to reach. To hold otherwise would result in the mere doing of the act which constitutes the violation being dispositive, in effect irrebuttable, since the mental state of the respondent would be rendered irrelevant and certainly non-mitigating.

Considering the purpose of disciplinary proceedings and the sanctions that flow from them, to protect the public, *Jeter,* 365 Md. at 289, 778 A.2d. at 396; *Bernstein,* 363 Md. at 226, 768 A.2d at 616–17; *Attorney Griev. Comm'n v. Koven,* 361 Md. 337, 343, 761 A.2d 881, 884 (2000), the facts and

circumstances of this case, *Tolar,* 357 Md. at 585, 745 A.2d at 1053, including the respondent's prior spotless record, see *Attorney Griev. Comm'n v. Franz,* 355 Md. 752, 762–63, 736 A.2d 339, 344 (1999); *Maryland State Bar Ass'n v. Phoebus,* 276 Md. 353, 362, 347 A.2d 556, 561 (1975), the respondent's candor and remorse, and the hearing judge's finding that the respondent had no intent to defraud, we think the appropriate sanction is a period of suspension, rather than disbarment. Accordingly, we order that the respondent be indefinitely suspended from the practice of law with the right to seek reinstatement after ninety days. The suspension shall commence thirty days from the date of the filing of this opinion.

IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST JOHN A. HAYES, JR.

CATHELL, Judge, concurring and dissenting.

I concur with the findings but dissent as to sanctions. I would disbar the respondent. At each instance when respondent knowingly used client's funds to pay his personal and business expenses, he was, at the least, misappropriating client's funds.

The majority uses language that is overly kind in describing the negative balances in respondent's trust accounts "while the respondent was still holding the $3500.00 for the client, the respondent's attorney trust account again showed a negative balance." The point is that respondent was not holding the $3,500.00. It was gone or there would have been no negative balance. In essence, the respondent was willfully misappropriating client's monies for his own use. In my view, no other logical conclusion can be made from the facts of the case.

In *Attorney Grievance v. Vanderlinde,* 364 Md. 376, 413–14, 773 A.2d 463, 470 (2001), we recently stated:

> "Accordingly, we reiterate once again the position we announced in *Kenney.*[1]  Moreover, we expound upon it by holding that, in cases of intentional dishonesty, *misappropriation cases,* fraud, stealing, serious criminal conduct and the like, we will not accept, as 'compelling extenuating circumstances,' anything less than the most serious and utterly debilitating mental and physical health conditions, arising from any source that is the 'root cause' of the misconduct *and* that also result in an attorney's utter inability to conform his or her conduct in accordance with the law and with the MRPC.  Only if the circumstances are that compelling, will we even consider imposing less than the most severe sanction of disbarment in cases of … the intentional misappropriation of funds…." [Some emphasis added.]

Respondent acknowledges that when he did so, he knew he was using client's funds for his own personal use.  In essence, he proffers because he did not intend to keep it permanently or that he intended to replace the funds, it was not willful.  I do not believe that the intention to give something back negates in any degree the willfulness of the taking in the first instance.

If this Court's opinions are to be recognized as meaningful, respondent should be disbarred.  If we do not mean what we have said in *Vanderlinde, Kenney,* and other cases, we should overrule the cases and say that misappropriation will not result in disbarment.  To strain to reach contrary results in similar cases puts into question the credibility of the Court in disciplinary proceedings.  Additionally, to treat willful misappropriation cases differently in respect to sanctions, in my view, raises questions among members of the bar in respect to fairness of treatment and, not the least, questions as to

---

1.  *Attorney Grievance Comm'n v. Kenney,* 339 Md. 578, 664 A.2d 854 (1995).

whether the Court means what it says in its disciplinary opinions.

Judge RAKER joins in this concurring and dissenting opinion.