859 A.2d 653

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Dimitri G. DASKALOPOULOS.

Misc. Docket AG No. 33 Sept. Term, 2003.

Court of Appeals of Maryland.

Oct. 13, 2004.

Melvin Hirshman, Bar Counsel and Dolores O. Ridgell, Assistant Bar Counsel for the Attorney Grievance Commission of Maryland for petitioner.

No arguments on behalf of the respondent.

BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

Argued Before BELL, Chief Judge.

The Attorney Grievance Commission of Maryland, the petitioner, acting pursuant to Maryland Rule 16–751,[1] approved the filing by Bar Counsel of a Petition For Disciplinary or Remedial Action against Dimitri G. Daskalopoulos, the respondent. In that petition, pursuant to two complaints filed against him, Bar Counsel charged the respondent with misconduct, as defined by Maryland Rules 16–701(i),[2] and 16–812, and consisting of violations of various of the Maryland Rules of Professional Conduct, as adopted by the latter Maryland Rule, to wit:. Rules 1.4, Communication,[3] 1.15, Safekeeping

---

1. Maryland Rule 16–751 provides:

"(a) Commencement of disciplinary or remedial action.(1)Upon approval of the Commission. Bar Counsel shall file a Petition for Disciplinary or Remedial Action in the Court of Appeals."

2. Pursuant to Maryland Rule 16–701(i) "Professional misconduct" or "misconduct" has the meaning set forth in Rule 8.4 of the Maryland Rules of Professional Conduct, as adopted by Rule 16–812. The term includes the knowing failure to respond to a request for information authorized by this Chapter without asserting, in writing, a privilege or other basis for such failure."

3. Rule 1.4 provides:

Property,[4] 8.1, Bar Admission and Disciplinary Matters,[5] and 8.4, Misconduct,[6] other Maryland Rules, *i.e.* 16–603, Duty to

"(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

"(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

4. Rule 1.15 provides, as relevant:

"(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account maintained pursuant to Title 16, Chapter 600 of the Maryland Rules. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and of other property shall be kept by the lawyer and shall be preserved for a period of five years after termination of the representation.

"(b) Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. Except as stated in this Rule or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third party, shall promptly render a full accounting regarding such property."

5. Rule 8.1 provides, as relevant:

"An applicant for admission or reinstatement to the bar or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:

\* \* \* \*

"(b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6."

6. Rule 8.4, as relevant, provides:

"It is professional misconduct for a lawyer to:
"(a) violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another;
"(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
"(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

maintain account,[7] 16–604, Trust Account–Required Deposits,[8] 16–606, Name and Designation of Account,[9] 16–607, Comming-ling of Funds,[10] 16–609, Prohibited

---

"(d) engage in conduct that is prejudicial to the administration of justice;"

\* \* \* \*

**7.** "An attorney or the attorney's law firm shall maintain one or more attorney trust accounts for the deposit of funds received from any source for the intended benefit of clients or third persons. The account or accounts shall be maintained in this State, in the District of Columbia, or in a state contiguous to this State, and shall be with an approved financial institution. Unless an attorney maintains such an account, or is a member of or employed by a law firm that maintains such an account, an attorney may not receive and accept funds as an attorney from any source intended in whole or in part for the benefit of a client or third person."

**8.** Rule 16–604 provides:
"Except as otherwise permitted by rule or other law, all funds, including cash, received and accepted by an attorney or law firm in this State from a client or third person to be delivered in whole or in part to a client or third person, unless received as payment of fees owed the attorney by the client or in reimbursement for expenses properly advanced on behalf of the client, shall be deposited in an attorney trust account in an approved financial institution. This Rule does not apply to an instrument received by an attorney or law firm that is made payable solely to a client or third person and is transmitted directly to the client or third person."

**9.** Rule 16–606 provides:
"An attorney or law firm shall maintain each attorney trust account with a title that includes the name of the attorney or law firm and that clearly designates the account as "Attorney Trust Account", "Attorney Escrow Account", or "Clients' Funds Account" on all checks and deposit slips. The title shall distinguish the account from any other fiduciary account that the attorney or law firm may maintain and from any personal or business account of the attorney or law firm."

**10.** Rule 16–607 provides:
"a. *General Prohibition.* An attorney or law firm may deposit in an attorney trust account only those funds required to be deposited in that account by Rule 16–604 or permitted to be so deposited by section b. of this Rule.
b. *Exceptions.*
"1. An attorney or law firm shall either (A) deposit into an attorney trust account funds to pay any fees, service charges, or minimum balance required by the financial institution to open or maintain the account, including those fees that cannot be charged against interest due to the Maryland Legal Services Corporation Fund pursuant to Rule 16–610 b 1(D), or (B) enter into an agreement with the financial

Transactions,[11] and sections of Maryland Code (1989, 2000 Replacement Volume), of the Business Occupations and Professions Article,[12] namely, § 10–304, requiring expeditious deposit of trust money into an attorney's trust account, 10–306, prohibiting the use of trust money "for any purpose other than the purpose for which the trust money is entrusted," and 10–307, subjecting an attorney who misuses trust money to disciplinary action.

We referred the case to the Honorable Michael E. Loney, of the Circuit Court for Anne Arundel County, for hearing pursuant to Rules 16–752(a)[13] and 16–757(c).[14] Although he

institution to have any fees or charges deducted from an operating account maintained by the attorney or law firm. The attorney or law firm may deposit into an attorney trust account any funds expected to be advanced on behalf of a client and expected to be reimbursed to the attorney by the client.

"2. An attorney or law firm may deposit into an attorney trust account funds belonging in part to a client and in part presently or potentially to the attorney or law firm. The portion belonging to the attorney or law firm shall be withdrawn promptly when the attorney or law firm becomes entitled to the funds, but any portion disputed by the client shall remain in the account until the dispute is resolved.

"3. Funds of a client or beneficial owner may be pooled and commingled in an attorney trust account with the funds held for other clients or beneficial owners."

11. Rule 16–609 provides:
"An attorney or law firm may not borrow or pledge any funds required by these Rules to be deposited in an attorney trust account, obtain any remuneration from the financial institution for depositing any funds in the account, or use any funds for any unauthorized purpose. An instrument drawn on an attorney trust account may not be drawn payable to cash or to bearer"

12. Bar counsel included Maryland Code (1989 ___, 2000 ___ Replacement Volume) § 10–606(b) of the Business Occupations and Professions Article, a penalty section, among the statutes violated.

13. Rule 16–752(a) provides:
"(a) Order. Upon the filing of a Petition for Disciplinary or Remedial Action, the Court of Appeals may enter an order designating a judge of any circuit court to hear the action and the clerk responsible for maintaining the record. The order of designation shall require the judge, after consultation with Bar Counsel and the attorney, to enter a scheduling order defining the extent of discovery and setting dates for the completion of discovery, filing of motions, and hearing."

14. Maryland Rule 16–757(c) provides:
"(c) Findings and conclusions. The judge shall prepare and file or

accepted service, the respondent neither filed an answer to the petition or appeared at the hearing.[15]   Consequently, an Order of Default was entered.   Subsequently, following a hearing, the hearing court found facts, by clear and convincing evidence, and drew conclusions of law with respect to the complaints of David Rushfield and Charles D'Amico, respectively.

The respondent was retained by David Rushfield, a New Jersey petroleum dealer, in connection with a contract dispute with Sunoco.   In June 2002, he negotiated a settlement of that dispute, under the terms of which Rushfield agreed to pay Sunoco fourteen thousand ($14,000.00) dollars.   To accommodate his client, who wanted to delay paying Sunoco until after he settled on the purchase of property for a new gas station, the respondent promised Rushfield, conditioned on being repaid at a later time, that he would pay Sunoco for him.   He did not do so.   Two months later, however, the respondent presented Rushfield with a settlement agreement, purportedly between Rushfield and Sunoco, in which a "Joseph D. Zulli" acknowledged receipt of thirteen thousand ($13,000.00) dollars. The respondent signed that name.   Subsequently, the respondent gave Rushfield a letter addressed to a Richard Gaines,

---

dictate into the record a statement of the judge's findings of fact, including findings as to any evidence regarding remedial action, and conclusions of law.   If dictated into the record, the statement shall be promptly transcribed.   Unless the time is extended by the Court of Appeals, the written or transcribed statement shall be filed with the clerk responsible for the record no later than 45 days after the conclusion of the hearing.   The clerk shall mail a copy of the statement to each party."

15.   The respondent did call the court immediately prior to the first hearing scheduled by the court following its entry of an Order of Default and, claiming to be hospitalized for neurological and psychological treatment at the Stanford Medical Center, Palo Alto, California, requested a continuance of that hearing so that he could file responses to the petition and discovery requests and present a defense.   The continuance was granted; however, the respondent did not appear at the continued hearing.

Esq. at Sunoco. According to that letter, due to a misunderstanding as to payment, for which Sunoco was at fault, the respondent enclosed a second check, this one in the amount of fourteen thousand ($14,000.00) dollars, to cover Rushfield's obligation to Sunoco. A complaint against the respondent having been filed with the petitioner on behalf of Mr. Rushfield, Bar Counsel sent respondent a letter advising him of that complaint. The respondent received and read that letter, but did not respond to it.

Based on the foregoing findings, the hearing court found, by clear and convincing evidence, that the respondent violated Rules 1.4, 8.1 and 8.4 of the Rules of Professional Responsibility. More particularly, the hearing court concluded, the respondent's lack of candor with respect to his payment of his client's obligation, after having represented that he would do so, resulting in failure to inform the client as to the status of settlement payment to Sunoco, or explain to him what actually transpired with respect to it, constituted the communications violation. The violation of Rule 8.1 consisted of the respondent's failure to respond in writing to Bar Counsel's request for information. As to Rule 8.4, the hearing court explained:

> "Respondent's conduct of forging a signature of Sunoco's counsel acknowledging receipt of thirteen thousand ($13,-000.00) dollars involved dishonesty, deceit, and misrepresentation in violation of Rule 8.4(c). Such conduct is prejudicial to the administration of justice in violation of Rule 8.4(d) and these also violate Rule 8.4(a)."

The respondent negotiated the settlement of the contract dispute between his client, Charles D'Amico, a New Jersey petroleum dealer, and Sunoco. The settlement agreement provided that Mr. D'Amico would pay and Sunoco would accept $71,188.61 for the termination of Mr. D'Amico's petroleum franchise. Mr. D'Amico authorized the respondent to wire the agreed sum directly to Sunoco. Consistent with that authorization and to facilitate the payment to Sunoco, on June 12, 2002, Mr. D'Amico, as instructed by the respondent, wired the agreed sum to a Bank of America account, "Mary Patricia M. Daskal, POD Dimitri G. Daskal," which the respondent

represented was his attorney trust account. That account, which before the transfer had a balance of only $211.78, was not the respondent's trust account. The respondent paid Sunoco only $32,740.00 of the $71, 188.61, by wire from the account on August 12, 2002, leaving a balance of $38,488.61. Nevertheless, the account balance as of October 8, 2002 was $1,554.08, and the respondent has never accounted for those funds. Although Bar Counsel notified the respondent of Mr. D'Amico's complaint, requesting a written response, none was ever given. In addition, the respondent failed to appear in response to a subpoena to personally appear for a statement under oath, despite having been served and having requested the rescheduling of the proceeding.

On these facts, the hearing court concluded that the respondent violated all of the rules and statutes charged. His failure to keep Mr. D'Amico informed concerning the settlement proceeds and, in fact, misleading him by falsely advising him that the funds would be placed in his attorney trust account and then forwarded to Sunoco, was a violation of Rule 1.4. Rule 1.15 was violated, the hearing court determined, when: the respondent placed Mr. D'Amico's funds in a personal account, rather than in his attorney trust account; did not promptly forward those funds to the third party to whom they were due; and failed to account for $38, 448.61 of those funds.

The Rule 8.1 violation consisted of the respondent's failure to respond to the petitioner's request for information. His failure to appear, after service, in response to a subpoena to personally appear for a statement under oath, also constituted a violation of that rule.

The hearing court found by clear and convincing evidence that the respondent misappropriated $38,448.61 of Mr. D'Amico's money. Because misappropriation is criminal conduct which adversely reflects on the respondent's honesty, trustworthiness or fitness to practice law, it constitutes, the court concluded, a violation of Rule 8.4(b).[16] Such conduct, the

---

16. The hearing court's memorandum opinion stated that the violation was of subsection (c). That subsection proscribes conduct "involving

hearing court also concluded, is prejudicial to the administration of justice in violation of Rule 8.4(d) and constitutes a violation of the rules of professional conduct.

Violations of Maryland Rules 16–603, 16–604, 16–606, 16–607 and 16–609 were found by the hearing court based upon the respondent's failure to: maintain an attorney trust account; deposit client funds in such an account; and name or designate such an account in a manner that clearly identifies it as such. The respondent also used funds for an unauthorized purpose, the hearing court concluded.

With respect to the charged violations of § § 10–304 and 10–307 of the Business Occupations and Professions Article, the hearing court was of the view that they were shown by the respondent's deposit of Mr. D'Amico's funds in an account that was not an attorney trust account and by the respondent's failure to account for that portion of the D'Amico funds that were not paid as authorized and, therefore, did not belong to him.

■ The petitioner has taken exception to the hearing court's failure to find in connection with the D'Amico complaint, a violation of Rule 8.4(c), proscribing conduct "involving dishonesty, fraud, deceit or misappropriation," and § 10–306 of the Business Occupations and Professions Article, prohibiting a lawyer's use of trust money for a purpose other than that for which it was entrusted. It submits:

> "The facts found by Judge Loney and his specific finding that Respondent knowingly misappropriated approximately half of the funds entrusted to him by [Mr.] D'Amico and that the funds were clearly disbursed for unauthorized and unintended purposes provide clear and convincing evidence of a violation of BOP § 10–306 and MRPC 8.4(c)." (Footnote omitted)

---

dishonesty, fraud, deceit or misappropriation," while Rule 8.4(b) addresses "a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." It is thus clear that the hearing court intended to find a violation of the latter subsection of Rule 8.4.

We agree. The petitioner's exceptions, accordingly, are sustained.

Turning to the sanction, the petitioner recommends that the respondent be disbarred. It points out, in support of the recommendation, that, in addition to a myriad of violations of varying severity, the hearing court found that in the course of representing two clients, the respondent forged the signature of another attorney in one case and misappropriated more than $38,000.00, or more than half of the funds entrusted to him for the purpose of discharging the client's contractual obligation, the amount of which the respondent negotiated, presumably for the client's benefit. Such conduct, the petitioner contends, of itself, warrants the ultimate sanction. Indeed, the petitioner reminds us of what we have said quite often, that "misappropriation "is an act infected with deceit and dishonesty, and, in the absence of compelling extenuating circumstances justifying a lesser sanction, will result in disbarment." *Attorney Grievance Comm'n v. Post,* 379 Md. 60, 68, 839 A.2d 718, 723 (2003); *Attorney Grievance Comm'n v. Spery,* 371 Md. 560, 568, 810 A.2d 487, 491–92 (2002). Thus, the general rule is, "disbarment will inevitably follow any unmitigated misappropriation of client, or any third party's funds." *Attorney Grievance Comm'n v. Hayes,* 367 Md. 504, 512–13, 789 A.2d 119, 124 (2002), and the cases therein cited. The same rule applies, moreover, it continues, when intentional dishonest conduct other than misappropriation is involved. *See Attorney Grievance Comm'n v. Gallagher,* 371 Md. 673, 715, 810 A.2d 996, 1021(2002); *Attorney Grievance Comm'n v. Vanderlinde,* 364 Md. 376, 410, 773 A.2d 463, 483 (2001).

As we have seen, the respondent has not responded to the petitioner's charges. He did not appear at the hearing and has not presented anything by way of mitigation for the Court to consider. There simply is nothing in this record that could, or would, mitigate the respondent's conduct; there are no compelling extenuating circumstances that would justify a lesser sanction than disbarment. Consequently, we adopt the petitioner's recommendation and order the respondent disbarred.

IT IS SO ORDERED; RESPONDENT SHALL PAY
ALL COSTS AS TAXED BY THE CLERK OF THIS
COURT, INCLUDING COSTS OF ALL TRANSCRIPTS,
PURSUANT TO MARYLAND RULE 16–761, FOR WHICH
SUM JUDGMENT IS ENTERED IN FAVOR OF THE
ATTORNEY GRIEVANCE COMMISSION AGAINST
DIMITRI G. DASKALOPOULOS.