629 A.2d 678

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Stanley M. DIETZ.

Misc. Docket (Subtitle BV) No. 28, Sept. Term, 1992.

Court of Appeals of Maryland.

Aug. 25, 1993.

Melvin Hirshman, Bar Counsel and John C. Broderick, Asst. Bar Counsel, for Attorney Grievance Com'n of Maryland.

Stanley M. Dietz, Poolesville, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

RODOWSKY, Judge.

This disciplinary proceeding against an attorney involves neglect of the matters of two separate clients. The underlying cause of the violations was respondent's unwillingness to reject legal employment offered to him.

Respondent, Stanley M. Dietz (Dietz), was born January 21, 1927. He has been a member of the Bar of this Court since May 1958. He also is admitted to practice before the courts of

the District of Columbia and before the trial and appellate courts of the United States in Maryland and in the District of Columbia. His practice is primarily the defense of criminal cases. He has maintained an office for the practice of law at various locations in downtown Washington, D.C., and out of his home in Montgomery County, Maryland.

In the first half of 1991 two complaints were filed with Bar Counsel against Dietz by former clients, one by Nikita Jurkevich (Jurkevich) and one by Ona Caine (Caine). When the Attorney Grievance Commission filed a petition for disciplinary action against Dietz in this Court, we referred the matter for hearing to Judge James L. Ryan of the Circuit Court for Montgomery County. Judge Ryan has concluded that Dietz violated a number of provisions of the Maryland Lawyers' Rules of Professional Conduct.[1] Dietz has not filed any exceptions to Judge Ryan's findings of fact or conclusions of law. Bar Counsel has filed exceptions that ask us to find additional violations in the Caine case.

## I

The Jurkevich matter was a personal injury claim. On February 24, 1988, Jurkevich was struck by a motor vehicle when, as a pedestrian, he had been crossing Riva Road in Annapolis. Jurkevich testified before Judge Ryan that he had stepped into Riva Road at an intersection, but he did not recall whether he was within a crosswalk boundary. He remembered nothing further about the accident. The police report reflects that Jurkevich was struck by a northbound vehicle, seventy-five feet south of the nearest intersection.

Jurkevich was hospitalized in a shock trauma unit for three weeks. As a result of the injuries his medical bills were approximately $30,000, and his loss of earned income was approximately $20,000.

---

1. All citations to rules are to the Maryland Lawyers' Rules of Professional Conduct, unless otherwise noted.

Jurkevich initially engaged an attorney practicing in Annapolis to represent him. That attorney-client relationship ended sometime after the attorney had received a letter of October 3, 1988, from the insurer of the motor vehicle, denying the claim. After investigation, the insurer took the position that Jurkevich's failure to yield to vehicular traffic was "the primary causal factor" of the accident. Before Judge Ryan, Jurkevich testified that he and the attorney in Annapolis had "a personality difference" that was "just differences of opinion."

On July 31, 1989, Jurkevich met with Dietz and delivered the file obtained from the Annapolis attorney. Its contents included, at least, medical reports, the police accident report, correspondence, and photographs of Jurkevich taken after the accident. Jurkevich signed a contingent fee retainer agreement form.[2] Jurkevich testified that he and Dietz discussed contributory negligence and the possibility of last clear chance. Under the retainer agreement form, the client bears costs, but Jurkevich made no deposit toward costs. Jurkevich testified that Dietz said that he would "turn over the file, such as it was, to [an associate,] Joe Collier, and he would look into it." Dietz never told Jurkevich that Dietz was not going to take his case or not going to continue with his case.

Dietz's version of the July 31, 1989, meeting differs. Dietz testified that he told Jurkevich that he, Dietz, would decide whether or not to take on the matter after Collier had reviewed it. Collier at some point did review the file, and found that there was no merit to the case.

Judge Ryan found that an attorney-client relationship arose under which Dietz undertook to represent Jurkevich in his personal injury claim. Judge Ryan made no finding of fact on the conflict in testimony, but that is immaterial to the exis-

---

**2.** The form is written in the first person, as if the client were addressing the attorney. The form has a signature line for the client on the right-hand side and, under the typewritten word, "ACCEPTED," a signature line for the attorney on the left-hand side. On the particular form in the matter before us, Jurkevich signed on both the left-hand and right-hand sides. Dietz never signed.

tence of the attorney-client relationship. In addition to the absence of any exception by Dietz, and in addition to the clear support for the finding in the testimony of Jurkevich, the relationship arose even if Judge Ryan relied exclusively on the testimony of Dietz. This is because of the ambiguity surrounding Dietz's version of his undertaking and the absence of any clear rejection or termination by Dietz of the representation.

A somewhat similar problem was one aspect of the ethical violations in *Attorney Grievance Comm'n v. Pinkney*, 311 Md. 137, 532 A.2d 1367 (1987). There, we approvingly quoted the hearing judge (Chasanow, J.) when he said that the attorney " 'had an obligation to advise her client if she did not believe that there was a valid claim, and she was not going to file suit on her client's behalf.' " *Id.* at 142, 532 A.2d at 1370.

Professor Wolfram's description of this unfortunately all too frequent scenario is apt.

"[T]he lawyer may have come to believe that further representation may not be warranted because developments after the initial consultation indicate that the client's legal position is much weaker than first conceived. A lawyer in such cases may be tempted to temporize, doing nothing until the client gets back into contact with a request for information or action. Such a course, however, can find the lawyer defending his or her inaction in a legal malpractice action and, at the least, may produce the kind of communication breakdown that is the source of a great deal of client dissatisfaction.

"It is far preferable for the lawyer to precipitate a client decision on whether or not to continue the matter or whether to continue the matter with another lawyer. The lawyer should take some definite step to do so, such as by sending a letter carefully explaining the reason why the representation has slowed and, if appropriate, indicating that the lawyer will consider that the client wishes the lawyer to cease the representation if no further word is received from the client."

C. Wolfram, *Modern Legal Ethics* § 9.5.1, at 543 (1986); *see also* 1 G. Hazard, Jr. & W. Hodes, *The Law of Lawyering: A Handbook on the Model Rules of Professional Conduct* § 1.3:106, at 75–76 (2d ed. 1992).

After their July 31, 1989, meeting, Jurkevich telephoned Dietz on numerous occasions. Jurkevich estimated that he spoke with Dietz personally fifty or seventy-five percent of the time when these calls were placed but there is no direct evidence from Jurkevich as to what Dietz said. Dietz indicated that he would personally review the file to see if he disagreed with Collier. In any event, the file on Jurkevich's claim was misplaced and was not located for over two years.

Dietz had maintained offices in Washington, D.C., in a suite of four rooms in a building on I Street. On May 30, 1990, Dietz moved to a suite of three small rooms in a building on Albermarle Street. During that move, the Jurkevich file, which had been on Dietz's desk, was put in a box with broken office equipment. Although Dietz's employee made several searches for the Jurkevich file, it was not found. Eventually, on November 6, 1992, when economic circumstances forced Dietz to move to an even smaller office in the Albermarle Street building, the file was found.

Jurkevich knew that limitations would run on his claim on February 24, 1991. He testified that after November 1990 Dietz's secretary had told him that his file was lost but that searches were being made for it.[3] By letter of January 14, 1991, Jurkevich discharged Dietz. Suit never was filed on Jurkevich's behalf, and the record is silent as to whether Jurkevich consulted any other attorney after Dietz had been engaged.

In the Jurkevich case Judge Ryan concluded that Dietz violated Rule 1.1, by failing to provide competent representation; Rule 1.3, by failing to act with reasonable diligence and

---

**3.** Dietz places this secretary's departure from his employ in October 1990 when Dietz could no longer afford to keep a full-time secretary on the payroll. As of the time of the hearing before this Court on the instant charges, Dietz had not employed a full-time secretary.

promptness; Rule 1.4, by failing to keep the client reasonably informed; and Rule 1.15, by failing appropriately to safeguard the client's file. These specific violations, viewed cumulatively on the facts of this case, present, in substance, a termination of the lawyer-client relationship by Dietz, without communicating it to the client. "[A] lawyer may withdraw from representing a client if withdrawal can be accomplished without material adverse effect on the interests of the client. . . ." Rule 1.16(b).

Had Dietz terminated the representation in a proper fashion, his obligation would have been to "take steps to the extent reasonably practicable to protect [the] client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, [and] surrendering papers and property to which the client is entitled." Rule 1.16(d). Here there is no proof to a clear and convincing standard that Dietz's uncommunicated withdrawal from representation had a material adverse effect on the personal injury claim of Jurkevich. On this record, that claim had no value.

## II

The other complainant, Caine, is a roofing contractor. On November 19, 1990, Caine had been sued in the District Court of Maryland in Montgomery County by another contractor who had subcontracted to Caine the roofing work on a home improvement contract. Caine consulted Dietz. She was anxious to minimize the costs of litigation. Dietz undertook the representation and was paid $500. Before Judge Ryan, Dietz maintained that the fee arrangement was $500 for each day of any court appearance, while Caine maintained that $500 was a flat fee for the representation. Judge Ryan found it unnecessary to resolve that dispute. There is no dispute that, under their agreement, Caine would perform all of the secretarial work. An answer and counterclaim to the general contractor's suit was filed January 3, 1991. February 6, 1991, was the trial date initially set by the court, but the case was postponed on February 6 to the afternoon of April 10, 1991. This new date

was a specially assigned trial date because of the number of witnesses involved.

All of the violations found by Judge Ryan concern Dietz's failure to appear for trial on April 10 and out of his informing Caine that it was unnecessary for her and her witnesses to appear at the scheduled time. These violations arose out of the following events.

On or shortly prior to April 9, 1991, Dietz received a telephone call from, or on behalf of, Erol Cole (Cole), a Jamaican national whom Dietz previously had represented. Cole had been arrested in Delaware, and the police had found a small quantity of marijuana in his wallet. There was to be a hearing on April 9 before the Immigration and Naturalization Service (INS) in Philadelphia. Dietz agreed to represent Cole at that hearing. Later Dietz was advised that the INS hearing would not be held on April 9, because the van transporting Cole to Philadelphia had broken down. On the morning of April 10 Dietz learned that the INS hearing would take place that afternoon, when the Caine case was to be tried.

Dietz telephoned counsel for the adverse party in the Caine case and requested consent to a postponement. Adverse counsel undertook to consult with the client. Dietz telephoned Caine to advise that the case might be postponed. Adverse counsel advised Dietz that a postponement was agreeable. Dietz telephoned the District Court's clerk's office and was advised that he would have to appear in court to request a postponement. At Dietz's request, adverse counsel then agreed to apply for the postponement in open court. At about noon on April 10 Dietz telephoned Caine and told her that the case was postponed. Dietz left for client Cole's hearing in Philadelphia.

At the scheduled trial time, the trial judge was less accommodating than adverse counsel. The District Court denied the postponement, dismissed Caine's counterclaim, and entered a judgment by default against Caine for $3,500, plus $272.88 interest and $20 court costs.

Subsequently, Dietz moved in the District Court to set aside the default judgment, but that motion was denied. Caine terminated the representation and engaged other counsel. Successor counsel appealed to the Circuit Court for Montgomery County which set aside the default judgment and remanded the matter for trial on the merits to the District Court. At the retrial, conducted by successor counsel, judgment on the general contractor's claim was entered in favor of Caine, but judgment was entered in favor of the general contractor on Caine's counterclaim.

Judge Ryan found three violations of the Rules by Dietz in the Caine matter: (1) a lack of diligence in violation of Rule 1.3 by instructing the client not to appear and by failing to appear in court on April 10; (2) a violation of Rule 1.16(a) by representing Cole when Dietz was to appear for trial of the Caine case;[4] and (3) a violation of Rule 8.4 "by telling Ona Caine that her case had been postponed when it had not been postponed, and by not appearing for trial in her case when he was required to do so."

Judge Ryan did not specify which portion or portions of Rule 8.4 he found to have been violated.[5] We infer that Judge

---

**4.** Rule 1.16(a) in part reads:

"Except as stated in paragraph (c) [dealing with continued representation ordered by a tribunal notwithstanding good cause for terminating the representation], a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

(1) the representation will result in violation of the Rules of Professional Conduct or other law...."

**5.** Rule 8.4 reads as follows:

"It is professional misconduct for a lawyer to:

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

Ryan found that Dietz engaged in misrepresentation by telling Caine that the case was postponed. There is not, however, any finding that this was other than a negligent misrepresentation. Dietz freely admits to Judge Ryan and to us that he made a "big mistake" in anticipating that the trial judge would postpone this specially set case at the time of trial in order for Dietz to appear in another matter that had been scheduled much later.[6] We further infer that the violation of Rule 8.4, in terms of a failure to appear for trial refers to subparagraph (d), involving conduct prejudicial to the administration of justice.

## III

■ Bar Counsel excepts to Judge Ryan's failure to find a violation of Rule 3.2, requiring a lawyer to "make reasonable efforts to expedite litigation consistent with the interests of the client." The exception is granted, but that ruling does not have any effect on the substance of this particular case. The seriousness of a violation, as it bears on the appropriate sanction, is not determined by the number of different rules, or subparts thereof, which the ingenuity of counsel can bring to bear to the same basic set of facts.

■ Bar Counsel also excepts to the lack of a finding that Dietz violated Rule 1.5, requiring a lawyer's fee to be reasonable. Bar Counsel does not contend that either version of the

---

(e) state or imply an ability to influence improperly a government agency or official; or
(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law."

**6.** The division of labor between Dietz, his client, and her office manager produced a good deal of conflict and confusion in the record as to whether the homeowner, whom Dietz considered to be an essential witness, was properly and timely subpoenaed for the April 10 trial, and, if not, precisely what the immediate cause of the deficiency might be. No findings of fact were made on that aspect of the case. To the extent that Bar Counsel's exceptions seek to bolster the finding of a lack of diligence by placing on Dietz the failure to cause this witness properly to be subpoenaed, the exception is denied for the lack of clear and convincing evidence.

fee, as initially set, was unreasonable. The theory of the exception is that Dietz's other violations made it unreasonable for him to retain the $500 paid to him. We agree.

■ In this case the default judgment directly resulted from Dietz's violations. At a minimum, the loss suffered by Caine included the expense incurred by her in engaging counsel to appeal the default judgment and to appear in circuit court where successor counsel was able to have that default judgment vacated. Dietz himself considers reasonable a fee of $500 for a court appearance on one day or a part thereof.[7] Inasmuch as the harm to the client as a result of Dietz's violations equaled or exceeded the amount paid to Dietz, the entire fee became excessive and should be refunded.[8]

Finally, Bar Counsel excepts to the lack of a finding of violation of Rule 3.4(c), which prohibits a lawyer from "knowingly disobey[ing] an obligation under the rules of a tribunal." The exception rests on Dietz's telephone conversation with the clerk's office on April 10. For the same reasons why we concluded that the misrepresentation to Caine was based on presumed or anticipated permission to postpone, Bar Counsel has not shown by clear and convincing evidence that Rule 3.4(c) was violated "knowingly," if at all. The exception is denied.

## IV

■ Turning to the question of an appropriate sanction, we shall first consider the Jurkevich complaint. There are no special aggravating or mitigating factors presented. Under

---

7. Dietz told Judge Ryan that, under Dietz's version of the fee arrangement with Caine, the $500 paid to him had been earned by his appearance in the District Court on February 6, 1991, to obtain the postponement to April 10, 1991.

8. The attorney grievance procedure is not a collection agency, and the trial of charges under the Rules is not the trial of a malpractice case. Further, only the unusual facts of the instant matter enable us to make the determination of unreasonableness from the record, without findings by the hearing judge.

those circumstances, the principal factors bearing on the sanction for a lack of diligence are the degree of seriousness or potential seriousness of the injury to the client and whether the particular violation is part of a pattern of neglect of client matters. *See* American Bar Association, *Standards for Imposing Lawyer Sanctions* § 4.4 (1986). For example, in *Attorney Grievance Comm'n v. Montgomery*, 296 Md. 113, 460 A.2d 597 (1983), the record presented negligent acts or omissions affecting five clients and extending over six years. We suspended Montgomery for sixty days, although, from his explanation, it was "obvious that his troubles to a large extent emanated from poor economic conditions." *Id.* at 121, 460 A.2d at 601. The Jurkevich matter, even in combination with the Caine matter, does not reflect a pattern. Indeed, Dietz has been in practice for some thirty-five years, but Bar Counsel has not brought to our attention any published or unpublished finding of any violation by Dietz in any jurisdiction.

■ Nor does the record reflect significant harm to Jurkevich. There is no evidence that Jurkevich sought to consult a third attorney. There is no evidence that Jurkevich actually undertook to reconstruct the missing file. Nor will we construe the attorney's obligation diligently to represent the client to include a duty to file suit in an attempt to obtain a nuisance settlement, even where special damages, if recoverable, would be substantial. If the Jurkevich case stood alone, the violation would warrant no more than a reprimand in an unpublished opinion.

The Caine matter, on the other hand, reflects economic loss to the client resulting from the default judgment. Dietz, however, did not schedule himself into the conflicting trial dates. When he undertook the INS hearing representation, it was scheduled for April 9, and he would have been free to try the Caine case on April 10. It was not until the morning of April 10 that Dietz learned that the INS hearing would be conducted that afternoon. Dietz had very little time in which

to resolve the dilemma which was thrust upon him.[9]

The record before us reflects nothing about the Pennsylvania horn of Dietz's dilemma. So far as the record reflects, he never attempted to postpone the INS hearing because of his unavailability. Nor does Dietz appear to have sought substitute counsel for Cole in Pennsylvania. We know neither the specific nature of the Pennsylvania hearing nor the degree of seriousness of the consequences to Cole of an adverse determination at that hearing. We do know that the choice made by Dietz, to seek a postponement of Caine's case through adverse counsel and without Dietz's personally appearing, ran a very high risk of damage to his client, Caine.

There are analogies between the instant matter and *Attorney Grievance Comm'n v. Ficker*, 319 Md. 305, 572 A.2d 501 (1990). Ficker had undertaken to represent two separate clients at their respective trials for driving while intoxicated, but had failed to appear. In one case Ficker had not entered the trial date on his desk calendar which was his only method of docket control. Ficker refunded the fee. In the other case, Ficker was in the courthouse at the time initially set for trial. While Ficker was in the corridor searching for the arresting officer, the case was postponed to March 3, 1987, because of the unavailability of the officer. Ficker did not receive from the District Court a notice of the new trial date because he had failed on the initial date to enter his appearance as required by District Court rule. On the March 3 date, the court continued the case until June 24 because of Ficker's absence. Ficker learned of the June 24 trial date from his client's mother, but because of a conflict with another case, he sought a postponement by letter that he misaddressed. Rely-

---

**9.** Maryland litigators are conditioned to accord priority to the court appearance that was earlier assigned for hearing, assuming that no speedy trial problems are involved. This is based on the Administrative Order by Chief Judge Murphy that was first promulgated in June 1978, and, as revised, appears in 8 Md.Reg. 16 (Jan. 9, 1981). That Administrative Order rests on an agreement between the judges of the federal courts in Maryland and the Maryland judiciary. Neither the Administrative Order nor the underlying agreement would apply directly to Dietz's dilemma.

ing totally on his anticipation that the postponement would be granted, Ficker advised the client that it was unnecessary to appear. The client nevertheless did appear, proceeded *pro se,* and was convicted. Without charge, Ficker represented the client on de novo appeal that resulted in a doubling of the fine. This Court concluded that a reprimand was the appropriate sanction.

Dietz's derelictions are by no means as serious as those of the attorney in *Attorney Grievance Comm'n v. Howard,* 282 Md. 515, 385 A.2d 1191 (1978). Howard failed to appear in a circuit court for trial on behalf of the plaintiff in a trip-and-fall case; he failed timely to file an appellate brief, but there were extenuating circumstances; and on three separate occasions he had been fined for contempt by different judges when he arrived late for court. Recognizing that Howard's then twenty-two years of practice had been otherwise free of taint, and that his lapses stemmed "from poor judgment in taking on too much work rather than from dishonesty or greed," this Court imposed a reprimand. *Id.* at 524, 385 A.2d at 1196.

In the instant matter, refund of the fee to Caine, coupled with payment of the costs of these proceedings, will keep Dietz, in our opinion, alert to his professional obligations and thereby protect his future clients.

Accordingly, the order in this case will provide as follows:

"The respondent, Stanley M. Dietz, having, within twenty-five days from the date of the filing of this opinion, either furnished evidence, reasonably satisfactory to Bar Counsel, that the $500 fee paid by Caine to Dietz has been refunded by Dietz to Caine, or having made arrangements with Bar Counsel, on terms reasonably satisfactory to Bar Counsel, for the refund by Dietz to Caine of the $500 fee paid by Caine to Dietz,

"It is, by the Court of Appeals of Maryland, ordered that Stanley M. Dietz is reprimanded."

The foregoing order will take effect thirty days from the date of this opinion unless, on application by Bar Counsel made prior to that thirtieth day, the foregoing order is modi-

fied by further order of this Court. The subject of any such application by Bar Counsel will be limited to the execution of the matters recited in the preamble to the above-quoted order.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING THE COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE BV 15 c FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST STANLEY M. DIETZ.*