794 A.2d 92

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

William Michael MONFRIED.

Misc. Docket AG No. 53, Sept. Term, 2000.

Court of Appeals of Maryland.

March 22, 2002.

374

Melvin Hirshman, Bar Counsel and Glenn M. Grossman, Deputy Bar Counsel for Atty. Grievance Com'n of Md., for petitioner.

Thy Pham, Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

RAKER, Judge.

The Attorney Grievance Commission, acting through Bar Counsel, filed a petition with this Court for disciplinary action against William Michael Monfried, respondent, alleging viola-

tions of the Maryland Rules of Professional Conduct (hereinafter "MRPC"). The Commission charged respondent with violating MRPC 1.1 (Competence),[1] 1.3 (Diligence),[2] 1.4 (Communication),[3] 1.5 (Fees),[4] 8.1 (Bar Admission and Disciplinary

1. MRPC 1.1 (Competence) provides as follows:

 A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

2. MRPC 1.3 (Diligence) provides as follows:

 A lawyer shall act with reasonable diligence and promptness in representing a client.

3. MRPC 1.4 (Communication) provides as follows:

 (a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.
 (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

4. MRPC 1.5 (Fees) provides, in pertinent part, as follows:

 (a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
 (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
 (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
 (3) the fee customarily charged in the locality for similar legal services;
 (4) the amount involved and the results obtained;
 (5) the time limitations imposed by the client or by the circumstances;
 (6) the nature and length of the professional relationship with the client;
 (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
 (8) whether the fee is fixed or contingent.

Matters),[5] and 8.4 (Misconduct).[6] We referred the matter to Judge Kaye Allison of the Circuit Court for Baltimore City to make findings of fact and proposed conclusions of law. Following an evidentiary hearing, Judge Allison concluded that respondent violated Rules 1.1, 1.3, 1.4, 8.1(b), and 8.4.[7] Respondent filed exceptions to Judge Allison's findings, and Bar Counsel excepted to Judge Allison's failure to find that respondent violated MRPC 1.5. Judge Allison made the following Findings of Fact and Conclusions of Law:

### Findings of Fact

"By clear and convincing evidence, the Court finds the following facts:

1. Respondent was admitted to the Bar in Maryland on June 21, 1973.

2. At the time of the hearing before the Circuit Court for Baltimore City on April 9, 2001, respondent maintained

---

5. MRPC 8.1 (Bar Admission and Disciplinary Matters) provides, in pertinent part, as follows:
 An applicant for admission or reinstatement to the bar, or a lawyer in connection with a bar admission application or in connection with a disciplinary matter, shall not:
 (b) fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority, except that this Rule does not require disclosure of information otherwise protected by Rule 1.6.

6. MRPC 8.4 (Misconduct) provides as follows:
 It is professional misconduct for a lawyer to:
 (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
 (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
 (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
 (d) engage in conduct that is prejudicial to the administration of justice;
 (e) state or imply an ability to influence improperly a government agency or official; or
 (f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law.

7. The hearing judge noted in her Findings of Fact and Conclusions of Law that "the court does not necessarily agree that the Commission has charged all of the Rules of Professional Conduct violated by the respondent." We agree. Nonetheless, the hearing judge appropriately recog-

an office for the practice of law and his residence at 730 Bethel Street, Baltimore, MD 21231.

### Matter of the Representation of Terrelle Hartley

3. Joyce Ann Hartley, Terrelle Hartley's mother, agreed to pay respondent $450.00 to represent her son, Terrelle Hartley. On July 1, 1999 she paid him $350.00 cash for this purpose.

4. Respondent entered his appearance on behalf of Terrelle Hartley in a juvenile matter in Baltimore County on July 2 or 3, 1999.

5. At sometime after respondent entered his appearance on the first matter, Matter # 1, Terrelle was arrested on a second matter, Matter # 2, and the respondent was contacted by someone connected with juvenile services administration in Baltimore County. Following this call, respondent contacted Joyce Ann Hartley who declined respondent's representation of Terrelle on Matter # 2 citing financial reasons.

6. Respondent never indicated to Joyce Ann Hartley that he would not represent Terrelle unless he was paid the remaining $100.00 in advance of the hearing.

7. Joyce Ann Hartley was prepared to pay respondent the remaining $100.00 at the scheduled hearing of Matter # 1 on August 18, 1999.

8. Respondent kept no file or notes on Terrelle Hartley and had no record of receipt of the $350.00 paid to him by Joyce Ann Hartley.

9. Respondent did not execute any retainer agreement or other document with Joyce Ann Hartley formalizing his representation of her son, Terrelle.

10. Hearing was scheduled on Terrelle's Matter # 1 for August 18, 1999 at 1:00 p.m.

11. Respondent did not appear at the hearing scheduled for August 18, 1999 nor did he request a postponement or otherwise contact the Court or his client.

---

nized that she was limited to the charges filed by Bar Counsel. *See In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968).

12. Terrelle and Joyce Ann Hartley were present at the hearing on Matter # 1.

13. Respondent did not receive notice of the August 18, 1999 hearing.

14. On one occasion prior to the August 18, 1999 hearing, Joyce Ann Hartley reached respondent by telephone to discuss Terrelle's case, but respondent said it was too soon to discuss it and ended the conversation.

15. Joyce Ann Hartley attempted, repeatedly, to contact the respondent at the telephone numbers he had given her, but was unable to reach him.

16. On August 18, 1999, after respondent failed to appear at Terrelle's hearing on Matter # 1, Master Richard Gilbert of the Circuit Court for Baltimore County called respondent's office and left a voice mail message on the respondent's electronic recorder regarding the missed hearing.

17. Master Gilbert never received a response to the voice recording he left for the respondent.

18. Terrelle Hartley's Matter # 1 was rescheduled for September 17, 1999 together with Matter # 2.

19. Notice of the rescheduled hearing on September 17, 1999 was sent to respondent at the address on his entry of appearance form.

20. Respondent did not appear on behalf of Terrelle Hartley on Matter # 1 on September 17, 1999 nor did he seek a postponement or otherwise contact the Court or his client.

21. At no time did respondent withdraw his appearance on behalf of Terrelle Hartley.

22. At no time did respondent communicate to the Court, Terrelle or Joyce Ann Hartley that he would withdraw his representation of Terrelle Hartley.

23. At no time did Terrelle or Joyce Ann Hartley communicate to respondent that they wished him to withdraw his appearance of Terrelle.

24. Respondent did not take any affirmative steps to determine Terrelle Hartley's first or second hearing dates on Matter # 1.

25. At the September 17, 1999 hearing a second attorney, Robert Lennon (the attorney of record for Terrelle on Matter # 2) entered his appearance on behalf of Terrelle Hartley on Matter # 1.

26. Respondent did not make arrangements to have Mr. Lennon or any other attorney enter his appearance for Terrelle Hartley on Matter # 1, nor did he discuss Matter # 1 with any attorney including Mr. Lennon.

27. Respondent never offered any explanation to Joyce Ann Hartley regarding his failure to appear, and he failed to return her telephone calls to him after the August 18, 1999 hearing at which he did not appear.

28. Respondent did not reimburse Joyce Ann Hartley the $350.00 paid to him for representation of Terrelle Hartley.

29. Respondent never interviewed or otherwise spoke to Terrelle Hartley.

30. Respondent failed to substantively communicate with Joyce Ann Hartley regarding Terrelle Hartley's case from July 2, 1999 to September 17, 1999.

31. Respondent never appeared on behalf of Terrelle Hartley; nor did he file any pleadings or other documents on behalf of Terrelle. Respondent requested no, and received no, discovery in Terrelle's case. Respondent obtained no police reports. Respondent knew the name of the identifying witness in Terrelle's case, but did not interview the witness.

32. Glenn M. Grossman, Bar Counsel, wrote to respondent on October 20, 1999 requesting that respondent respond to the letter, dated September 20, 1999, received by the Attorney Grievance Commission from Master Richard J. Gilbert. Bar Counsel reiterated his request by letter dated November 10, 1999. A final request to respond to Master Gilbert's letter was made of respondent by letter dated December 3, 1999.

33. Respondent did not respond to the inquiries of Bar Counsel dated October 20, 1999; November 10, 1999; and December 3, 1999.

### Matter of the Representation of Michael Windsor

1. On or about August 5, 1999, respondent met with Michael Windsor's mother, Mary L. Windsor, at her home to discuss Michael's revocation of parole.

2. On or about August 5, 1999, respondent was retained to represent Michael Windsor in connection with the revocation of his parole.

3. On or about August 5, 1999, respondent was paid $1000.00 by Mary L. Windsor for his representation of Michael Windsor. The $1000 .00 was a flat fee to perform the following services: 1) meet with Michael at the correctional facility in Maryland; 2) obtain a date for Michael's revocation hearing; and 3) represent Michael at the revocation hearing.

4. Respondent did not execute any retainer agreement or other document with Ms. Windsor formalizing his representation of Michael.

5. Respondent did not meet with Michael Windsor at the correctional facility.

6. On more than one occasion respondent spoke to Michael Windsor on the telephone when Michael Windsor called him from the correctional facility.

7. During a telephone conversation with Michael Windsor, respondent agreed to meet with Michael, but he did not.

8. In subsequent calls made by Michael Windsor to respondent, respondent's telephone was disconnected and Michael could not reach respondent.

9. Michael Windsor requested his mother, Mary Windsor, attempt to reach respondent.

10. Mary Windsor attempted to telephone respondent in advance of the August 16, 1999 hearing date and the telephone was disconnected.

11. Respondent telephoned the Parole Commission to request a hearing date for Michael Windsor on two or three occasions shortly after August 8, 1999.

12. The Parole Commission scheduled a hearing for Michael Windsor for August 16, 1999.

13. Michael Windsor learned of the hearing from correctional authorities, not respondent.

14. Respondent did not memorialize the contents of his conversation with the Parole Commission employees with whom he spoke in any memorandum, note or file notation.

15. Respondent wrote on a legal pad the name of one of the Parole Commission employees with whom he spoke, but did not retain the legal pad.

16. Respondent could not remember the name of the Parole Commission employees with whom he spoke.

17. Respondent never received any written communication from the Parole Commission regarding Michael Windsor's hearing date.

18. At no time did respondent communicate the August 16, 1999 date to Michael or Mary Windsor or to Michael's girlfriend.

19. Respondent did not communicate to Michael or Mary Windsor or Michael's girlfriend that he had arranged the hearing for August 16, 1999 until after Mary Windsor's complaint was filed with the Attorney Grievance Commission.

20. Respondent did not inform Michael or Mary Windsor or Michael's girlfriend that he would not be present at the hearing.

21. Prior to the August 16, 1999 hearing date, respondent held the opinion that Michael would be released after the hearing, but he did not communicate that opinion to Michael or Mary Windsor or to Michael's girlfriend.

22. Respondent was on vacation on August 16, 1999, and did not attend the parole revocation hearing for Michael Windsor.

23. Respondent was in Baltimore, Maryland moving his residence and office during the vacation week that included August 16, 1999.

24. At the August 16, 1999 parole revocation hearing Michael Windsor waived his right to be represented by counsel and proceeded without representation.

25. The August 16, 1999 hearing lasted for approximately one hour and 45 minutes.

26. . Michael Windsor was released after the August 16, 1999 hearing, but lost 'street time' and 'good conduct' days.

27. Michael and Mary Windsor and Michael's girlfriend received no explanation or communication from respondent despite Ms. Windsor's October 1, 1999 letter to respondent requesting an explanation.

28. Glenn M. Grossman, Bar Counsel, wrote to respondent on November 2 and 29, 1999 regarding the complaint filed by Mary Windsor. Respondent responded by letter received on December 13, 1999.

29. By letters dated December 14, 1999; January 12, 2000; and January 24, 2000, Bar Counsel requested further information from respondent, but respondent did not answer Bar Counsel's request for further information.

## Conclusions of Law[1]

---

[1] The court's conclusions are based on the charges alleged by the Attorney Grievance Commission pursuant to Rule 15–709. While the court does not necessarily agree that the Commission has charged all of the Rules of Professional Conduct violated by the respondent, the court is constrained by the Commission's charges for the reason that Rule 16–709 specifies that "[c]harges against an attorney shall be filed by the Bar Counsel acting at the direction of the Review Board."

### Matter of the Representation of Terrelle Hartley

Respondent violated the following rules of the Maryland Rules of Professional Conduct in his representation of Terrelle Hartley.

### Rule 1.1 Competence

1. Respondent violated Rule 1.1 when respondent failed to undertake the preparation reasonably necessary for the representation of Terrelle Hartley's case by failing to interview his client and by failing to undertake any investigation from the date respondent entered his appearance, July 2 or 3, 1999, until the date of the second hearing, September 17, 1999.

## Rule 1.3 Diligence

2. Respondent violated Rule 1.3 when respondent failed to act with reasonable diligence and promptness when he failed to interview his client or undertake any investigation from the date respondent entered his appearance, July 2 or 3, 1999, until the date of Terrell's second hearing, September 17, 1999.

3. Respondent violated Rule 1.3 when respondent failed to act with reasonable diligence and promptness when he failed to make any effort to ascertain the date of Terrelle Hartley's hearing from the date respondent entered his appearance, July 2 or 3, 1999, until the date of Terrelle's second hearing, September 17, 1999.

## Rule 1.4 Communication

4. Respondent violated Rule 1.4(a) when respondent failed to keep Terrelle or Joyce Ann Hartley informed of the status of Terrelle's case from the date respondent entered his appearance, July 2 or 3, 1999, until the date of Terrelle's second hearing, September 17, 1999.

5. Respondent violated Rule 1.4(b) when respondent failed to explain Terrelle's matter to the extent reasonably necessary to permit Terrelle and Joyce Ann Hartley to make informed decisions regarding Terrelle's case and by neglecting to conduct any substantive discussions with Terrelle Hartley or Joyce Ann Hartley at anytime from the date respondent entered his appearance, July 2 or 3, 1999, until the date of Terrelle's second hearing, September 17, 1999.

6. Respondent violated Rule 1.4(a) when he failed to respond to Joyce Ann Hartley's repeated attempts to contact him.

**Rule 8.1(b) Bar Admission and Disciplinary Matters**

7. In failing to respond to the inquiries of Bar Counsel dated October 20, 1999; November 10, 1999; and December 3, 1999, respondent knowingly failed to respond to a lawful demand for information from a disciplinary authority in violation of Rule 8.1(b).

**Rule 8.4 Misconduct**

8. Respondent engaged in conduct that was prejudicial to the administration of justice in violation of Rule 8.4 by 1) failing to be present at the August 18 and September 17, 1999 hearings for Terrelle Hartley; and 2) by failing to respond to Master Richard J. Gilbert's request for information regarding the respondent's failure to appear at Terrelle Hartley's August 18, 1999 hearing.

### Matter of the Representation of Michael Windsor

**Rule 1.4 Communication**

9. Respondent violated Rule 1.4(a) when respondent 1) failed to inform Michael Windsor or Mary Windsor that he would not appear at Michael's hearing on August 16, 1999; 2) failed to inform them that the hearing was scheduled for August 16, 1999; 3) failed to respond to Mary Windsor's letter of October 1, 1999.

10. Respondent violated Rule 1.4(b) when respondent failed to meet with Michael Windsor, as he represented he would, prior to the August 16, 1999 parole revocation hearing and thus failed to explain Michael's circumstances with him to the extent reasonably necessary for Michael to make informed decisions regarding his parole revocation matter and hearing.

11. Respondent violated Rule 1.4(b) when respondent failed to counsel Michael regarding respondent's opinion that Michael would be released following the revocation hearing.

### Rule 1.3 Diligence

12. Respondent violated Rule 1.3 when respondent failed to 1) meet with his client; 2) to appear at his client's August 16, 1999 parole revocation hearing.

### Rule 8.1(b) Bar Admission and Disciplinary Matters

13. In failing to respond to the inquiries of Bar Counsel dated December 14, 1999; January 12, 2000; and January 24, 2000, respondent knowingly failed to respond to a lawful demand for information from a disciplinary authority in violation of Rule 8.1(b).

### Rule 8.4 Misconduct

14. Respondent engaged in conduct that was prejudicial to the administration of justice in violation of Rule 8.4 by failing to appear at Michael Windsor's parole revocation hearing.

### Respondent's Motion to Dismiss

At the close of the evidentiary hearing, respondent argued that the charges against him should be dismissed for the reason that he had requested a postponement of the proceedings before the Inquiry Panel to obtain substitute counsel, but was denied. Bar Counsel argued that the Circuit Court did not have the authority to grant the relief requested. No testimony was taken on the motion.[2]

This court has concluded that it does not have jurisdiction to entertain respondent's motion for two reasons. First, Rule 16–710 governing hearings specifically provides at section 'b' that hearings of charges shall not be challenged 'by reason of any procedural defects alleged to have occurred prior to the filing of charges.' Although respondent has couched his argument as one of Constitutional dimension, it is more appropriately considered, if considered at all, as a pre-charge procedural defect not cognizable in this forum. Second, the Court of Appeals' charge to this court under Rule 16–709 pertains specifically to the 'charges contained in the pleadings attached hereto' and no motion to

dismiss was filed by the respondent or attached to the Court of Appeals' order.

For these reasons, the court has given no consideration to the respondent's motion to dismiss."

2. Three exhibits were entered on the record for purposes of the motion, respondent's (erroneously marked 'Defendant's') Exhibit # 1 and Petitioner's Exhibits # 5 and # 6.

Both parties filed exceptions to the Findings of Fact and Conclusions of Law set forth by the hearing judge.

## I.

This Court has original and complete jurisdiction over attorney disciplinary proceedings. *See Attorney Grievance Comm'n v. Mooney,* 359 Md. 56, 73, 753 A.2d 17, 26 (2000). Factual findings of the hearing judge will not be disturbed if they are based on clear and convincing evidence. *Attorney Grievance Comm'n v. Jaseb,* 364 Md. 464, 475, 773 A.2d 516, 522 (2001); *Attorney Grievance Comm'n v. Fezell,* 361 Md. 234, 253, 760 A.2d 1108, 1118 (2000). The hearing judge may "pick and choose which evidence to rely upon." *Fezell,* 361 Md. at 253, 760 A.2d at 1118. We make an independent review of the record to determine whether the findings of the hearing judge are based on clear and convincing evidence.

We shall first address respondent's exceptions. Respondent excepts to the hearing judge's Findings of Fact and Conclusions of Law in both the Hartley matter and the Windsor matter. In the Hartley matter, he excepts to the following findings of fact:

"that Ms. Hartley was prepared to pay respondent on August 18, 1999; that when Ms. Hartley called respondent, he told her it was too soon to discuss Terrelle's case; that Ms. Hartley attempted to call respondent repeatedly and was unable to reach him; that respondent never communicated to Ms. Hartley that he would withdraw his representation of Terrelle and she never told him she wanted him to

withdraw his appearance; that respondent failed to return Ms. Hartley's telephone calls after the August 18, 1999 hearing; and that respondent failed to substantively communicate with Ms. Hartley regarding Terrelle's case from July 2, 1999 to September 17, 1999."

In the Windsor matter, he excepts to the following findings of fact:

"that respondent was retained to meet with Michael at the correctional facility and to represent him at the revocation hearing; that Michael learned of his hearing date from the correctional authorities; that respondent did not communicate the August 16, 1999 date to Michael and he did not communicate to Michael he had arranged the hearing until after the complaint was filed; that respondent did not inform Michael that he would not be present at the hearing; and that respondent did not communicate to Michael his opinion that Michael would be released after the hearing."

Respondent argues the hearing judge should have accepted his version of the events and rejected the testimony of Ms. Hartley and the Windsors. He maintains that Ms. Hartley "could not distinctly remember relevant facts, nor could she precisely narrate the details thereof." In sum, his position is that Ms. Hartley was not credible. In the Windsor matter, respondent's argument is essentially the same—that the hearing judge should have believed his version of the events and not that of the Windsors.

Judge Allison held an evidentiary hearing on April 9, 2001, in the Circuit Court for Baltimore City. Glenn Grossman represented Bar Counsel and respondent appeared *pro se*. Master Richard Gilbert, Mary Windsor, Michael Windsor, Joyce Hartley and respondent testified at the hearing. As is often the case, the primary issue was credibility. It is clear from the findings and conclusions of Judge Allison that she accepted the testimony presented by Bar Counsel and rejected respondent's testimony.

Based upon an independent review of the record, we must determine whether the findings of the hearing judge are

based on clear and convincing evidence. *Jaseb,* 364 Md. at 475, 773 A.2d at 522. Judge Allison heard the witnesses testify and chose to believe the testimony of witnesses other than respondent. The hearing judge is in the best position to evaluate the credibility of the witnesses and to decide which one to believe and, as we have said, to pick and choose which evidence to rely upon. The judge was free to disregard the testimony of respondent if the judge believed the evidence was not credible. *See Attorney Grievance Comm'n v. Kerpelman,* 288 Md. 341, 363, 420 A.2d 940, 950 (1980), *cert. denied,* 450 U.S. 970, 101 S.Ct. 1492, 67 L.Ed.2d 621 (1981).

The witnesses' testimony relied upon by the hearing judge was not so contradictory or inherently incredible to require a conclusion, as respondent argues, that they were unworthy of belief. We find that clear and convincing evidence exists to support Judge Allison's findings. Respondent's exceptions are without merit and accordingly, are overruled.

We turn now to Bar Counsel's exceptions. Bar Counsel excepts to Judge Allison's failure to find that respondent violated MRPC 1.5 in connection with his representation of Michael Windsor. Bar Counsel did charge respondent with a violation of MRPC 1.5 in the Windsor matter, and argued that respondent's conduct constituted a violation of the Rule. The hearing judge made no finding in her report with respect to that charge.

The sole argument Bar Counsel presents before this Court is that because respondent substantively failed to represent his client, and in light of the violations found by Judge Allison to have occurred, respondent's fee was more than unreasonable; it was unconscionable. Respondent argues that in charging a total fee of $1000.00, he charged a fair fee and that he "succeeded heroically" for Mr. Windsor.

MRPC 1.5 provides that a lawyers fee must be reasonable.[8] The Rule provides, in pertinent part, as follows:

---

8. Many of the Maryland Rules of Professional Conduct track the American Bar Association Model Rules of Professional Conduct. MRPC 1.5

"(a) A lawyer's fee shall be reasonable. The factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

---

is substantially similar to Model Rule of Professional Conduct 1.5. *See* MODEL RULES OF PROF'L CONDUCT R. 1.5. MRPC 1.5 replaced DR 2–106 in 1986. Although the language is somewhat different, the focus of MRPC 1.5 is still on excessive fees. *See Attorney Grievance Comm'n v. Eisenstein*, 333 Md. 464, 482, 635 A.2d 1327, 1336 (1994)(stating that "[t]he focus of MRPC 1.5 is clearly upon excessive fees"). The Code of Professional Responsibility, DR 2–106 provided as follows:
"(A) A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee.
(B) A fee is clearly excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
(3) The fee customarily charged in the locality for similar legal services.
(4) The amount involved and the results obtained.
(5) The time limitations imposed by the client or by the circumstances.
(6) The nature and length of the professional relationship with the client.
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
(8) Whether the fee is fixed or contingent."
Rule 1.5 requires that a fee be "reasonable," and no longer requires the DR–2–106(A) requirement that a fee be either illegal or "clearly excessive." In *In re Dorothy*, 605 N.W.2d 493 (S.D.2000), the South Dakota Supreme Court considered the legislative history of Rule 1.5 and noted the intent of the new rule, in eliminating the prohibition on excessive fees and substituting a test of reasonableness, was to impose a stricter standard upon lawyers who would charge too much. *Id.* at 499–500. DR–2–106(A) prohibited not only the setting of an excessive fee, but also the *collection* of an unreasonable fee. The same is true under Rule 1.5.

(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) The fee customarily charged in the locality for similar legal services;

(4) The amount involved and the results obtained;

(5) The time limitations imposed by the client or by the circumstances;

(6) The nature and length of the professional relationship with the client;

(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) Whether the fee is fixed or contingent."

The rule sets forth a nonexclusive list of factors to be considered in determining whether a fee meets the test of "unreasonable."

At the hearing before Judge Allison, respondent maintained that the $1000.00 fee he received from Mary Windsor was merely to get a parole hearing date scheduled for Michael. Bar Counsel maintained, and the hearing judge so found, that Ms. Windsor paid respondent the $1000.00 as a flat fee to represent Michael and to meet with him at the correctional facility in Maryland, to obtain a date for Michael's revocation hearing, and to represent Michael at the hearing. Based on the hearing judge's findings of fact, it is clear that the judge concluded that respondent provided little to none of the promised services, and that he, at most, made a few phone calls to get a parole hearing date scheduled. A determination of unreasonableness ordinarily requires a factual hearing and findings of fact. *See Med. Mut. Liab. Ins. Soc'y v. Evans*, 330 Md. 1, 32, 622 A.2d 103, 118 (1993). In the instant case, however, it is immaterial that the hearing judge did not determine if the actual fee charged by respondent was unreasonable in light of the factors set out in MRPC 1.5, because she found respondent performed minimal work for the client and failed to perform as promised.

■■ In reality, Bar Counsel is arguing that the fee in the Windsor matter was *unearned.* Courts do not attempt to draw a bright line as to what constitutes a reasonable attorney fee, nor are courts in the practice of setting attorney fees. Nonetheless, this Court *is* required to protect the public from lawyer misconduct. *See Attorney Grievance Comm'n v. Hines,* 366 Md. 277, 293, 783 A.2d 656, 665 (2001); *In re Dorothy,* 605 N.W.2d 493, 498 (S.D.2000) (stating that because the court is required to protect the public from lawyer misconduct, the issue of attorney fees warrants serious discussion). A fee charged for which little or no work was performed is an unreasonable fee. *See In re O'Brien,* 130 N.M. 643, 29 P.3d 1044, 1048 (2001) (stating that "any fee is excessive when absolutely no services are provided"); *In re Martinez,* 108 N.M. 252, 771 P.2d 185, 188 (1989)(noting that even though the fees charged by an attorney would be more than modest for the agreed upon services had the attorney actually performed them, when an attorney takes even a minimal fee from a client and does little or no work on the client's case, that fee is excessive); *People v. Nutt,* 696 P.2d 242, 246–47 (Colo.1984) (finding a fee excessive where an attorney billed a client for work not done or work unrelated to the client's case).

In *Attorney Grievance Comm'n v. Dietz,* 331 Md. 637, 629 A.2d 678 (1993), the hearing judge found, and this Court agreed, that Dietz violated MRPC 1.1, 1.3, 1.4 and 1.16(b), violations similar to the violations committed by respondent in the instant case. Bar Counsel excepted to the failure of hearing judge to find that Dietz violated MRPC 1.5. In that case, Bar Counsel did not contend that the fee, as initially set, was unreasonable. Bar Counsel argued only that Dietz's other violations [9] made it unreasonable for him to retain the

---

**9.** Judge Rodowsky, writing for the Court, noted that the client's default judgment directly resulted from the attorney's violations. He recounted:

"At a minimum, the loss suffered by [the client] included the expense incurred by her in engaging counsel to appeal the default judgment and to appear in Circuit Court where successor counsel was able to have that default judgment vacated. Dietz himself considers reason-

$500.00 paid to him. This Court agreed with Bar Counsel and held that the entire fee became excessive. *Id.* at 647, 629 A.2d at 683.

■ Respondent violated MRPC 1.1, 1.3, 1.4, 8.1(b), and 8.4. Although the fee may have been reasonable for the services that Judge Allison found were to be provided, respondent did little or no work for Mr. Windsor. Accordingly, we hold that the hearing judge was clearly erroneous in failing to find respondent charged an unreasonable fee in violation of MRPC 1.5.

## II.

Having determined that respondent has violated MRPC 1.1, 1.3, 1.4, 1.5, 8.1(b), and 8.4, we turn to the sanction. Bar Counsel recommends respondent be disbarred. Respondent suggests a public reprimand.

■ It is well settled that the purpose of disciplinary proceedings against an attorney for violation of the Rules of Professional Conduct is to protect the public, to preserve public confidence in the legal profession, and to deter members of the Bar from acting in a similar fashion. *Attorney Grievance Comm'n v. Jaseb,* 364 Md. 464, 480–81, 773 A.2d 516, 525 (2001). It is not to punish the lawyer or to provide a basis upon which to impose civil liability. *See Post v. Bregman,* 349 Md. 142, 168, 707 A.2d 806, 819 (1998) (stating that disciplinary rules are not designed to be a basis for civil liability); *Attorney Grievance Comm'n v. Kent,* 337 Md. 361, 384, 653 A.2d 909, 921 (1995); *Attorney Grievance Comm'n v. Kolodner,* 316 Md. 203, 208, 557 A.2d 1332, 1334 (1989). We have stated that "the public is protected when sanctions are imposed that are commensurate with the nature and gravity of

---

able a fee of $500 for a court appearance on one day or a part thereof. Inasmuch as the harm to the client as a result of Dietz's violations equaled or exceeded the amount paid to Dietz, the entire fee became excessive and should be refunded."
*Attorney Grievance Comm'n v. Dietz,* 331 Md. 637, 647, 629 A.2d 678, 683 (1993).

the violations and the intent with which they were committed." *Attorney Grievance Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997). The appropriate sanction to be imposed depends upon the facts and circumstances of each particular case. *Attorney Grievance Comm'n v. Myers,* 333 Md. 440, 447, 635 A.2d 1315, 1318 (1994).

 As stated above, Bar Counsel recommends disbarment. Citing Standard 9.22(g) of the American Bar Association (ABA) Standards for Imposing Lawyer Sanctions,[10] ABA/BNA LAWYER'S MANUAL ON PROFESSIONAL CONDUCT, No. 119, at 1:838 (1992), in support of its recommendation, Bar Counsel contends that disbarment is appropriate because "respondent's attitude that his actions were fair and ethical in the face of the clear and convincing evidence against him constrains the petitioner to seek the sanction herein." In determining the appropriate sanction, evidence of remorse has been considered a mitigating factor, and lack of remorse as an aggravating factor. In this case, however, respondent's exceptions were based on his version of the facts, which were rejected by the hearing judge. The mere filing of the exceptions in the exercise of an attorney's right under the Maryland

---

10. Standard 9.22 of the American Bar Association (ABA) Standards for Imposing Lawyer Sanctions states:

 "9.22 Factors which may be considered in aggravation. Aggravating factors include:
 (a) prior disciplinary offenses;
 (b) dishonest or selfish motive;
 (c) a pattern of misconduct;
 (d) multiple offenses;
 (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
 (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
 (g) refusal to acknowledge wrongful nature of conduct;
 (h) vulnerability of victim;
 (i) substantial experience in the practice of law;
 (j) indifference to making restitution;
 (k) illegal conduct, including that involving the use of controlled substances."
 ABA/BNA LAWYER'S MANUAL ON PROFESSIONAL CONDUCT, No. 119, at 1:838–39 (1992).

Rules does not equate to lack of remorse. Nor does it support a finding that the attorney does not acknowledge the wrongfulness of his conduct. As we said in the context of a criminal case, "it is improper to conclude that a decision ... not to plead guilty ... is a factor which ought to, in any way, influence the sentencing judge to the detriment of the accused." *See Johnson v. State,* 274 Md. 536, 542–43, 336 A.2d 113, 116 (1975). A similar rationale applies in the context of attorney discipline matters. We will not consider the fact that an attorney exercised his or her right to file exceptions under the Maryland Rules as an aggravating factor in imposing a sanction.

▆▆ Bar Counsel also points out, appropriately, that respondent has a prior reprimand issued by the Review Board on March 9, 2000 for violation of MRPC 1.15(a) and 8.1(b), Maryland Rules 16–603 and 16–604, and Maryland Code (1957, 2000 Repl.Vol., 2001 Supp.) § 10–306 of the Business and Occupations and Professions Article. Prior disciplinary actions against an attorney are an appropriate consideration in arriving at an appropriate sanction. *See, e.g., Attorney Grievance Comm'n v. Myers,* 333 Md. 440, 447, 635 A.2d 1315, 1318 (1994). In fashioning an appropriate sanction, we shall take into consideration the prior reprimand.

▆▆ Having found that the respondent violated MRPC 1.1, 1.3, 1.4, 1.5, 8.1(b), and 8.4, it is now the duty of this Court to assess an appropriate sanction. In this analysis, we examine the nature of the misconduct, the lawyer's state of mind which underlies the misconduct, actual or potential injury flowing from the misconduct, the duty of this Court to preserve the integrity of the profession, the risk to the public in allowing the respondent to continue in practice, and any mitigating or aggravating factors. *Attorney Grievance Comm'n v. Glenn,* 341 Md. 448, 484, 671 A.2d 463, 480 (1996). The public interest is served when this Court imposes a sanction that demonstrates to members of the legal profession the type of conduct that will not be tolerated. *See Attorney Grievance Comm'n v. Bridges,* 360 Md. 489, 516, 759 A.2d 233,

247–48 (2000) (quoting *Attorney Grievance Comm'n v. Brown,* 353 Md. 271, 295, 725 A.2d 1069, 1080 (1999)). The severity of the sanction imposed depends upon the facts and circumstances of each case. *See Attorney Grievance Comm'n v. Dechowitz,* 358 Md. 184, 192, 747 A.2d 657, 661 (2000). We also consider sanctions this Court previously imposed in similar cases.

We recently reiterated, in *Attorney Grievance Comm'n v. Hayes,* 367 Md. 504, 789 A.2d 119, 2002 Md. Lexis 8, at *1 (2002), the guiding principles this Court applies when considering whether disbarment is the appropriate sanction. We stated as follows:

"Standard 5.11 of the American Bar Association Standards for Imposing Lawyer Sanctions (1986), provides that:

Disbarment is generally appropriate when: (a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or (b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice."

*Hayes,* 367 Md. 504, 789 A.2d at 124, 2002 Md. Lexis 8, at *11 (internal quotation marks omitted).

Considering all the facts, circumstances, and our recent decisions involving similar offenses, we conclude that an indefinite suspension rather than disbarment is more appropriate. Fortunately, neither client was seriously or permanently harmed.

██ We believe that the appropriate sanction is an indefinite suspension with the right to apply for reinstatement after the expiration of 180 days and the requirement that, as a condition of his reinstatement, respondent repay to Ms. Windsor the fee charged in that matter. In light of the violations

committed by respondent in that matter, this Court has the discretion to order repayment of the fee as a condition of reinstatement. *See Florida Bar v. Carlon*, —— So.2d ——, ——. 2001 WL 1166349, at \*7, Fla. Lexis 1925, at \*22 (Fla. 2001); *Florida Bar v. Della–Donna*, , 583 So.2d 307, 311 (Fla.1989) (holding that in disciplinary proceedings, restitution can be tied to reinstatement or readmission to the practice of law).

In *Attorney Grievance Comm'n v. David*, 331 Md. 317, 628 A.2d 178 (1993), the attorney's representation of four clients was marked by serious neglect and inattention. The attorney's conduct was remarkably similar to the respondent's conduct in the instant matter. Attorney David failed to return a fee which was unearned for a period of nine months; he failed to timely remit funds he received on behalf of a client; he failed to communicate with his clients; and he failed to respond to Bar Counsel. We suspended the attorney indefinitely from the practice of law, with the right to apply for reinstatement after six months.

In *Attorney Grievance Comm'n v. Mooney*, 359 Md. 56, 753 A.2d 17 (2000), the attorney violated MRPC 1.1, 1.3, 1.4, 5.1, 5.3, and 8.4. by failing to: appear in court, communicate with his client, file appropriate motions, manage his office staff properly, and properly subpoena witnesses and obtain records. This Court imposed an indefinite suspension, with the right to apply for reinstatement after ninety days.

In *Attorney Grievance Comm'n v. Cohen*, 361 Md. 161, 760 A.2d 706 (2000), respondent violated MRPC 1.1, 1.3, 1.4, 8.1(a), and 8.4(c) and (d). We imposed an indefinite suspension with the right to reapply in six months.

In *Attorney Grievance Comm'n v. Alison*, 349 Md. 623, 709 A.2d 1212 (1998), we also imposed an indefinite suspension upon an attorney who committed misconduct under MRPC 8.4(d) and, like respondent, did not respond to Bar Counsel's investigatory requests in violation of MRPC 8.1(b). In that opinion, we noted that Alison previously had been suspended by this Court.

Finally, in *Attorney Grievance Comm'n v. Hallmon*, 343 Md. 390, 681 A.2d 510 (1996), we suspended the attorney for violating MRPC 8.1(b), as well as assisting in the unauthorized practice of law in violation of MRPC 5.5.

In the case before this Court, respondent was not charged with violating MRPC 8.4(c). As in *Hayes*, there is neither a finding that the respondent violated a disciplinary rule necessarily implicating his honesty or integrity, nor a finding by the hearing judge that the respondent's actions were taken with a dishonest or fraudulent intent.

It is hereby ordered that:

1. Respondent, William Michael Monfried, is indefinitely suspended from the practice of law in Maryland, with leave to reapply for reinstatement after the expiration of one hundred eighty (180) days. This period of suspension shall commence thirty (30) days from the date of entry of this Opinion and Order.

2. Respondent is directed to refund $1000.00 to Ms. Windsor prior to any application for reinstatement.

3. Respondent is directed to pay all costs associated with these disciplinary proceedings as taxed by the Clerk of this Court.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16–715, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST WILLIAM MICHAEL MONFRIED.*